HORACE ABBOTT AND OTHERS
vs.
THE BALTIMORE AND RAPPAHANNOCK
STEAM PACKET CO. AND OTHERS.

MARCH TERM, 1847.

[COMMISSIONS TO RECEIVERS—SUBSTITUTION—PRACTICE.]

IT has not been the uniform practice of the court to allow receivers of insolvent corporations and private partnerships a commission of eight per cent. but the allowance in such cases has been controlled by the circumstances of each case rather than by any fixed, invariable principle or analogy.

As a general rule governing all cases not attended with peculiar circumstances requiring an augmentation, the allowance to receivers of insolvent corporations or private partnerships will be regulated by the general rule allowing commissions to trustees.

The clerk of a steamboat has a lien upon the vessel for his claim for wages, and stands in that respect upon an equal footing with the crew.

The captain of a steamboat drew an order upon the company, upon which the clerk advanced the money and applied it to pay the crew. HELD—That this order operated as an assignment of so much of the fund out of which

the crew were to be paid, and substituted the clerk in the place of the crew and entitled him to their rights as their assignee.

Where a creditor omitted to furnish proof of his claim in due time, having acted upon information derived from the receiver that his claim would be allowed, and the fund was still under the control of the court, it was HELD—That he should be allowed to prove his claim and receive his proportion of the dividends.

It is the duty of this court if suitors are misled by its agents, however innocently, to repair the injury if it can be done without prejudice to the ascertained rights of others.

[The facts of this case are sufficiently stated in the Chancellor's opinion.]

THE CHANCELLOR :

In this case a bill was filed by the complainants on the 13th of October last, alleging and showing themselves to be creditors of the Baltimore and Rappahannock Steam Packet Company, charging the said company to be insolvent, and upon that and other grounds praying for an injunction against them, and other parties associated with them, prohibiting certain acts complained of, and for the appointment of a receiver to take possession of the property and effects of the corporation, and to dispose thereof subject to the orders of the court.

The injunction was ordered on the filing of the bill, and the same order directed that a receiver would be appointed, with or without answer, unless good cause to the contrary should be shown by a day limited for that purpose upon service of a copy of the order and bill on the adverse parties.

On the 1st of January, 1847, the answers of some of the defendants having been filed, an order was passed appointing a receiver, with power to take possession of and hold the property subject to the order of the court, and subsequently on the 4th of January, 1847, with the written consent of the parties filed in the cause, the receiver was authorized to make sale of the property upon certain specified terms at public sale, and by the same order was directed to notify the creditors of the corporation to file their claims in the Court of Chancery within two weeks from the day of sale.

Under this order the receiver made sale of the property in

his possession on the 2d of February last, amounting to upwards of twenty-six thousand dollars, and this sale being reported, the proceedings are now laid before the Chancellor for an immediate ratification thereof, to which the parties interested give their assent.

There would, therefore, be no difficulty in passing the usual order of ratification, but for a suggestion which created some doubt in the mind of the court as to the rate of the commission which should be allowed the receiver upon the proceeds of these sales. It has been suggested by counsel of the highest respectability and extensive practice in the court, that eight *per centum* is the usual allowance to receivers of insolvent corporations or private partnerships in analogy to the allowance to trustees of insolvent debtors under the act of 1805, ch. 110, sec. 10, and that the late Chancellor, proceeding upon that analogy, had fixed the commission accordingly in all such cases.

Supposing that the office, responsibilities and duties of a receiver are strictly analogous to those of the trustee of an insolvent debtor, it would not follow that the commission would in all cases be eight *per cent.*, because that rate is the *maximum* allowed by the act to such trustees, which, therefore, though it cannot be exceeded, may be reduced by the court.

In consequence, however, of the suggestion above mentioned, the Chancellor has considered it proper, by an examination of some of the cases passed upon by his predecessor, to ascertain how far any rule upon the subject has been established, and the result is, as he understands the cases, that the amount of compensation allowed to receivers has been controlled by circumstances rather than by any fixed, invariable principle, or analogy.

In *Williamson* vs. *Williamson*, 1 *Bland*, 418, which was the case of an insolvent partnership, decided in 1826, the allowance to the receiver was eight *per centum*, but as said by the Chancellor at page 428, the compensation was determined on a representation of his trouble, skill, and merits, as to which the parties were entitled to be heard. The allowance, therefore, in this case was not in conformity with any established rule.

In the manuscript case of *Fell* vs. *Doyle*, in 1831, which

likewise was the case of an insolvent partnership, the Chancellor in May, 1832, ratified the report of the Auditor, allowing the receiver five *per centum* of the proceeds of the sales.

By an order passed on the 22d of May, 1844, in the case of *Landstreet* vs. *the Shot Tower Company of Baltimore and others,* the Chancellor, upon the petition of certain trustees, appointed by deed for the benefit of the creditors of the company, allowed to them and their successor eight *per cent.* upon all sums actually collected and disbursed by them. The Chancellor, in the order in question, considered that case as analogous to one arising under the insolvent laws, and granted the commission expressly in consideration of the *great trouble* the trustees had. This it will appear was not the case of an allowance to a receiver but trustees, and might be urged, therefore, as a precedent for allowing them in all cases of insolvent corporations or partnerships the same rate of commission. It is, however, manifest, as it seems to me, that the allowance was not made so much in deference to the analogy referred to as in consideration of the great trouble which the trustees had encountered, which, according to the standing order of the court, would have entitled them to a compensation exceeding the scale fixed by that order. This case, therefore, cannot be understood as establishing a rule applicable to the proper allowance of commissions to receivers, and distinguishing between them and trustees. It was the case of trustees, and the analogy to the insolvent system spoken of by the Chancellor, must, therefore, be regarded as applying to them, and would in all cases entitle them to a commission of eight *per cent.,* if the rule suggested is to be considered as the established rule of this court.

In the case of *White* vs. *White,* in 1844, which was the case of a partnership, and in which receivers were appointed, they were allowed a commission of eight *per cent.* upon the *rents and profits,* and upon the proceeds of sales according to the usual chancery scale upon sales made under its decrees and orders. In the case of *White* vs. *White,* the Auditor's report in which the above allowance was made was ratified on the 20th of December, 1844, though by an order passed upon the 2d of

26*

the same month, the receivers were allowed a commission of eight *per cent.* on the sums received and disbursed by them. As however the actual allowance was eight *per cent.* on the rents and profits, and according to the usual chancery scale on the sales, the opinion of the Chancellor upon the subject must have undergone some change between the dates of his two orders.

The Chancellor, therefore, is not satisfied that it is the uniform practice of the court to allow receivers of insolvent corporations or private partnerships a commission of eight *per cent.*, but if it were otherwise, he would feel unwilling to fix that rate of commission in this case, as the insolvency of the company, though averred in the bill, is explicitly denied by the answers, and cannot, therefore, now be assumed to exist.

Upon consulting the books of practice it will be found that no uniform, invariable rate of allowance prevails in *England,* but that each case depends upon its own circumstances, and according to the degree of difficulty, or facility experienced by the receiver, the compensation is diminished or increased. *Daniell's Ch. Pr.*, 1985, 1986.

It would certainly be a great convenience to the court, and perhaps on other accounts desirable, that some scale of compensation should be established which shall govern all cases not attended by peculiar circumstances, and for that reason entitled to an augmentation of the allowance.

The Chancellor thinks that the standing order passed at March term, 1817, regulating the commissions to be allowed to trustees, &c. on sales made under the decrees and orders of the court, furnishes the proper standard of compensation, with the same discretion *to* increase it in case of extraordinary difficulty or trouble, or to reduce it in case of negligence, and an order will be passed in this case accordingly. Should circumstances arise hereafter involving the receiver in difficulties not now foreseen, it is presumed the means of remunerating him for such additional trouble will then exist, and will be brought to the attention of the court in the usual way; but as the case now presents itself, a departure from what the Chancellor considers proper to adopt as a general rule would not be justifiable.

Since writing the foregoing, the Chancellor has seen two other manuscript cases going to confirm his impression that no fixed rule has been established regulating the rate of compensation to be allowed to receivers of insolvent corporations or firms. The first is the case of *Edward Hughes* vs. *Charles P. Rogers and others,* in which by an order passed on the 17th of April, 1843, the receiver was allowed a commission of seven *per cent.* on his sales and collections as a compensation for his trouble, the sales and collections amounting to $2983 09.

The other is the case of *Mayhew et al* vs. *Moore et al,* in which, if the defendants were not insolvent, their business was not only embarrassed, but broken up. In this latter case, the late Chancellor, by an order passed on the 10th of February, 1844, allowed the receivers the same compensation which is allowed upon sales made by trustees, &c. under decrees and orders of the court.

I repeat, therefore, the impression before expressed, that the order which I am about to pass, is not in conflict with the established practice of the court, or the analogy which my predecessor is supposed to have taken as his guide in similar cases.

There is a marked difference, it would seem, between the case of receivers clothed with the ordinary powers appertaining to that office, such as taking possession of the property and collecting and disbursing the rents and profits usually coming in, in small sums and covering a considerable space of time, where accurate accounts have to be kept of receipts, and trouble and risk incurred in preserving the vouchers of payments, and of those who promptly obtain an order for the sale of the property, and thus bring their task to a speedy termination. In this latter case, the trouble and risk is not only essentially diminished, but the fund upon which the commission is to be computed is greatly increased.

In this case an order was properly and promptly obtained for the sale of the property, and by the invitation to the creditors to come in with their claims, the proceeding is made to assume, in effect, the character of a creditor's bill, in which case, as the fund would be administered by the court, the trouble

and risk of the receiver would be the same, and no greater, than that of an ordinary trustee, thus rendering still more apparent the propriety of measuring the compensation by the same standard.

Independently of these views, it seems to the Chancellor that this case, so far as the question of commissions on the sales is concerned, is embraced by the standing order of March, 1817. That order declares that, "on sales under decrees and orders of the court, the following allowances to be made to trustees," &c. Then follows the scale which, as before mentioned, may, in the discretion of the court, be increased or diminished according to circumstances. The allowance, it will be observed, is to be made upon all sales under the decrees and orders of the court, and to trustees, &c. It applies to any sale made under the authority of the court, whether by a trustee or other agent, and as the sale in this case was made under an order of the court, and by an officer appointed by the court, it would seem to be in terms covered by the standing order, and as no special circumstances are yet shown, calling for the exercise of the discretion reserved to the Chancellor to enlarge the rate of compensation fixed by the order, he deems it proper to be governed by it in this case.

———

[The property of the company, which was sold in this case, consisted of steamboats and vessels used by them in the prosecution of their business, and other effects, and the crews who navigated these vessels, and the parties who furnished supplies to the vessels claimed a prior lien upon the proceeds of sale. These questions were argued and decided by the Chancellor in favor of the claimants, and his opinion, delivered upon the 20th of July, 1847, is reported in 1 *Md. Ch. Decisions*, 542. The case was afterwards again brought before the court in reference to certain claims which had been suspended by the previous order, and upon these the Chancellor delivered the following opinion.]

The Chancellor:

This case is brought before the court for further directions with regard to the claims suspended by the order of the 11th of September, 1847.

So far as relates to claim No. 101, being that of Bentley C. Bibb, it is understood that he holds in his hands money belonging to the company sufficient to pay his entire claim, and, therefore he is not, in any event, to receive any part of the money now under the control of this court.   The question submitted is, whether of the cash in his hands, he shall retain the whole amount of his claim or a dividend only.   His claim consists of two items, one of which is for wages due him as clerk on board the vessel, and the other of a draft in his favor, drawn by Captain Fairbanks, on the company, and accepted by the latter, and it is contended that as Bibb advanced the money for this draft, which was applied to pay the crew, that Bibb is entitled to be substituted in their place, and to be preferred to the other creditors ; that the order operated as an assignment of so much of the fund out of which the crew were to be paid, and places him, Bibb, in the shoes of the crew and entitled to their rights as their assignee.   And that this is the effect of such a transaction in a court of equity, is, I think, fully supported by the authorities. 2 *Story's Eq.*, secs., 1043, 1044, 1047.   Other parties are not prejudiced by it, because if the money of Bibb had not been applied in this way, the claims of the crew to be paid out of the fund would have been so much the larger.   I think, therefore, that as the holder of this order he is entitled to be paid in full, and may retain accordingly, and that for the wages due him as clerk, he has the same rights, he standing in that respect upon an equal footing with the crew.

The claim of Freeland & Hall, No. 43, was excluded from a dividend by the order of the 11th of September, 1847, upon the ground that it was not sufficiently proved.   Since that time a petition has been filed by these parties, in which they state that the omission to furnish proof in due time resulted from some misapprehension on the part of themselves and their solicitor, growing out of information said to have been communi-

cated to them by the receiver. The receiver has answered this petition in compliance with an order of the court, and although I am perfectly satisfied that there was no intention to mislead these parties, or to withhold from them any fact connected with the proceedings in the cause, yet I am strongly inclined to think that the petitioners acted under the impression that their claim was or would be allowed, and that this impression was founded upon information derived from the receiver. Under these circumstances, the receiver being the officer of the court, and there being a fund still under its control, without disturbing distributions already made, I think this claim should be let in for its proper dividend out of this fund, provided it be sufficiently established by the proofs. It is the duty of this court, as it seems to me, if suitors are misled by its agents, however innocently, to repair the injury, provided it can be done without prejudice to the ascertained rights of others, as appears to be practicable in the present instance. With regard to the proofs in support of this claim, I am of opinion, after a careful examination of them, that they are sufficient, and the claim will therefore be allowed its proper dividend.

The remaining claims are those due Samuel M. Shoemaker, numbered 102, 103 and 104. Of these, the two last are conceded to be sufficiently proved, and they, therefore, will be allowed. The claim numbered 102 is an open account, and consists of three items. The two last items seem to be proved, and will be allowed, and the first item being for the salary of the claimant, as agent of the company, will be allowed up to the 31st of August, 1846, when, according to his own deposition upon the petition of Freeland and Hall, he left the service of the company. After that time, of course, no such allowance can be made him.

It appears by the answer of the receiver to the petition of Freeland & Hall, that a considerable sum yet remains for distribution, out of which the claims now allowed may be paid their dividends so as to place them upon a footing of equality with other claims already allowed, of the same character.