JAMES HIGGINS AND JOSHUA HIGGINS,
vs.
RICHARD W. HIGGINS AND OTHERS.

} DECEMBER TERM, 1847.

[PRACTICE IN CHANCERY—TRUSTS.]

A TESTATRIX by her will executed in 1812, bequeathed her property, real and personal, in trust, for the use of her granddaughter during her natural life, and after her death the same with its increase, to be divided generally among her children. The trustee named in the will declining to act, the Chancellor appointed trustees in 1815, who in 1827 were discharged, and two of the *cestui que trusts* were appointed trustees in their place, and in the same year a decree was passed for a sale of some of the negroes belonging to the estate, and the trustees gave bond for the execution of the trust. The granddaughter died 1846, and in the same year two of the *cestui que trusts* filed their bill for a settlement of the estate and distribution of the fund. HELD—

That in the distribution of the fund, under *this bill*, the accounts of the trustee, who sold some of the negroes under the decree of 1827, and appropriated the proceeds to his own use, could be inquired into and settled, and the amount so appropriated by him, with interest, deducted from his share of the fund.

There is but one trust in this case, though it has been cut up into several distinct proceedings, and now, when a final disposition of the whole fund is about to be made, it is indispensable to justice that all the proceedings should be brought together by an order of consolidation.

The trustee, acting under the decree of the Court of Chancery of 1827, is entitled to a commission of *seven and one half per cent.* on the income of the real and personal estate.

[The facts of this case are fully stated in the Chancellor's opinion.]

THE CHANCELLOR:

The merits of this controversy, as I understand them, are decidedly with the plaintiffs, and, therefore, unless some insuperable difficulty shall be found in the legal and technical objections urged by the solicitor for the defendants, an order or decree must be passed in accordance with the prayer of the bill.

It appears by the proceedings, that a Mrs. Ann Maccauley, in November, 1812, executed her last will and testament, by which she gave and bequeathed all her property, of every description, to her friend Gideon White, in trust, for the use of her granddaughter, Ann Higgins, the wife of George W. Higgins, during her natural life, and after her death, all the said property, and its increase, to be equally divided among the children her said granddaughter should leave at the time of her death, share and share alike. And the testatrix further declared it to be her will, that in case her said granddaughter should survive her husband, that then the trust created by the will should cease and determine, and the whole of the property of which the testatrix died possessed, and the increase thereof, should be vested in, and be the sole right, property and estate of her said granddaughter, her executors, administrators and assigns.

The testatrix died in the following year, when the will was duly admitted to probate, and the trustee, White, having refused to assume the trust, and having also renounced the executorship of the will, the Chancellor, on the 16th of May, 1815, upon the petition of Higgins and his wife, passed an order directing that White should assign the trust to Thomas H. Dorsey and Thomas W. Hall, and vesting in them authority to act as trustees under the will, in the same manner as if they had been appointed by the testatrix.

After some further proceedings upon this petition, which it does not appear to me to be necessary to notice particularly,

the trustees, Dorsey and Hall, on the 8th of April, 1827, filed their petition in that case asking to have their accounts audited, and that they might be relieved from any further execution of the trust, and on the 11th of September following, an order was passed referring the case to the Auditor, to state the necessary accounts.

The Auditor, on the 14th of September, 1827, reported an account, showing a balance due the trustees of $280 95, which was ratified by the Chancellor on the 8th of October following. And on the same day, upon the petition of Higgins and wife, the defendant, Richard W. Higgins, and the complainant, Joshua Higgins, were, by an order of the Chancellor, appointed trustees, to complete the trusts of the will of Ann Maccauley, in the place of the said Dorsey and Hall.

On the 15th of October, 1827, a bill was filed in this court, by Higgins and wife, Richard W. Higgins, Joshua Higgins and Dorsey and Hall, against James Higgins, an infant son of the said Higgins and wife, in which the proceedings in the other case are referred to, and praying upon the allegation, that the negroes had so much increased in number as to be burdensome to the estate, that a portion of them, of which a list was annexed to the bill, and numbering 23, might be sold, and the proceeds applied to the payment of the balance due Dorsey and Hall, and the residue to the use of the other complainants.   The Chancellor passed a decree upon this bill, on the 6th of December following, for a sale of the property, and appointing the said Richard W. Higgins and Joshua Higgins trustees, to sell, who on the 27th of February, 1828, executed a joint bond for the faithful performance of the trust.

Richard W. Higgins, one of the trustees, reported the sale of one of the negroes, on the 8th of May, 1834, and on the 10th of April, 1835, he reported the sale of two others, both of which sales were duly ratified; since which period there does not appear to have been any further proceeding in that case.

The bill in the present case, was filed on the 27th of June, 1846, by James Higgins and Joshua Higgins, two of the children of Ann Higgins, who died early in that year, (her husband

surviving her,) against Richard W. Higgins, her remaining child, and his insolvent trustee, in which the proceedings in the first of the other two cases are referred to, and the aid of the court is asked in settling up the estate by sale or division thereof, among the parties entitled, and upon the allegation that Richard W. Higgins had, by selling and appropriating the money to his own individual use, received a much larger share of the trust estate than he would, upon a fair distribution thereof, be entitled to; the complainants pray that neither he nor his insolvent trustee, he having petitioned for the benefit of the insolvent laws in the year 1840, should be allowed to participate therein.

The bill was answerd by the defendant, Higgins, and his permanent trustee, David Stewart. The answer of the latter puts the complainants to the proof of the case, and pleads the statute of limitations, against any claim against Richard W. Higgins founded upon the alleged conversion by him of the personal property to his own use.

The answer of Higgins, admits most of the material averments of the bill. And in his testimony, which was taken under a commission, and order for his examination, subject to exceptions, and which, I think competent, though objected to, he proved, that while acting as trustee and manager he sold a number of the negroes, whose names and prices are stated, and that the proceeds of sale so made by him, as of the crops made upon the trust property, which consisted in part of real estate, he appropriated to his own use one-half, and the other half to the support of the estate, and of the family, of whom his brothers Joshua and James were members. He further stated, that Joshua always objected to the sales made by him of the negroes. And in a deposition made by the same witness, which it was agreed should avail as if taken under the commission, he proved that he had received the sum of about $700, as hire of a portion of the trust negroes, of which he had appropriated at least four-fifths to his own use.

Under an agreement for the purpose, the two cases founded
20*

upon the will of Ann Maccauley were introduced as evidence in this cause.

Upon this state of facts, the question is presented, and has been argued, whether in case of a sale or division of the remaining trust property, the insolvent trustee of Richard W. Higgins can be admitted to a participation until he shall have first accounted for that portion thereof which it is apparent, from his own testimony, he has received and applied to his own individual benefit?

In the event which has happened, the death of Mrs. Ann Higgins in the lifetime of her husband, her children, the two complainants, and Higgins, one of the defendants, were to receive share and share alike the property bequeathed by Mrs. Maccauley and its increase, such being the express language of the will, and it is therefore perfectly obvious that if the defendant, Higgins, should be allowed to retain that which he has already appropriated to his own use, and to receive his share of what remains equally with the other children, he will have enjoyed a larger portion of the proceeds than he is fairly entitled to, and the provisions of the will must be disregarded and frustrated.

Against a consequence so unjust, the principles settled by the orders of the late Chancellor, in the case of *Harwood's estate*, are in decided opposition, and without some controlling authority overruling them, I could not bring my mind to a different conclusion. Here is a trust fund under the control of the court, which it is asked to distribute among the parties entitled, and it appears by the evidence of one of them, who was constituted also trustee for the others, under the authority of this court, that whilst acting in that capacity he received and applied to his own use a large part of the trust fund, and in the face of that confession on his part, it is proposed that he shall be allowed to come in equally with the other *cestui que trusts* in the division of what remains, without accounting for that which he has already received.

It is said, however, that before any notice can be taken of the proceedings of the defendant, Richard W. Higgins, under

the decree of December, 1827, by which he and Joshua Higgins were appointed trustees, to sell certain of the slaves that the accounts in that case should be settled, and that even if settled, these complainants must seek their remedy upon his bond, and cannot under the bill in this case have any relief in respect of those accounts.

It must be remembered, however, that by the agreement of parties, the proceedings in relation to the trust under the will of Mrs. Maccauley, and upon the bill filed on the 15th of October, 1827, are introduced and made evidence, and although the bill filed in this case does not refer in terms to the trust created by the bill of October, 1827, yet looking to the whole scope and object of the present application to this court, it seems sufficiently obvious that the defendant, Higgins, was called upon to account for the whole trust connected with this property. And the proceedings in all the cases being before the court by agreement, I do not think there is any rule of chancery pleading which will debar the complainants from the right now in this case to have those accounts examined and adjusted.

It is, moreover, by no means clear, that all the sales were made by the defendant, Higgins, under that decree. He reported the sale of but three slaves, and in his testimony he speaks of the sales as having been made by him when acting as trustee and manager, and speaks of the proceeds of such sales, and of the crop made on the land, constituting a part of the trust estate in the same way, and as having been indiscriminately appropriated to his own use. There is, therefore, great difficulty in determining whether in making the sales other than those which he reported to the court, the trustee, R. W. Higgins, was acting under the order of the 8th of October, 1827, which substituted him and Joshua Higgins as trustees, to complete the trust created by the will of Mrs. Maccauley, or under the decree of the 6th of December of the same year, by which they were authorized to sell the negroes therein mentioned.

But conceding for the sake of the argument that the sales were all made under the latter decree, and that the accounts of

the trustees appointed by it must be settled independently, and cannot be made the subject of investigation in this case, the court cannot see how the ultimate rights of the parties would be affected by it. If the proceeds of the property now about to be divided, or sold for the purpose of division, were ready for distribution, the court, upon a proper application, *suggesting* the misapplication by Richard W. Higgins of the trust fund which came to his hands under the decree of December, 1827, *would detain* his proportion of the property in this case, to meet anything which he might appear to be indebted to the parties in the other case, when his accounts should be settled. For, entertaining the opinion that it is the duty of this court so long as the fund is under its control, to see that these *cestui que trusts* receive equal portions of the bounty of Mrs. Maccauley, it would not suffer any one of them to withdraw from its custody any portion of it when well grounded suggestions are made that such party has already received more than his share.

According to my view of this case, there is but one trust, although it has been cut up into several distinct proceedings, and parceled out among several hands. Now, when a final disposition of the whole trust fund is about to be made, it is indispensable to justice that the proceedings in all the cases should be brought together, which may be done by an order of consolidation which will be passed.

The next question discussed by the counsel relates to the liability of the defendant, Richard W. Higgins, to be charged with interest upon the proceeds of sales for which he has not accounted, and I think there can be no doubt that he is so liable. In the contingency which has happened, the increase as well as the original stock was to be equally divided among the three children of Mrs. Higgins, and if any one of them has appropriated an undue share of the principle to his use, I am at a loss to see upon what principle he shall be exempt from the payment of interest. Suppose, instead of wrongfully using this money, he had with the consent of the court borrowed it from the trust fund ? Would he not in such case be chargeable

with interest, and if he would, shall he not be equally chargeable when he has used it without any such authority? It is no answer to say that Mrs. Higgins was entitled to the use of this property during her life, because the interest on the money expended by the defendant, Higgins, is a part of the use of which she did not receive the benefit, and it must go over with the other increase according to the will.

The question whether Joshua Higgins is so far implicated in the misconduct of the defendant, Richard, as to make him responsible to his co-complainant, James, is a question to be settled between them, but cannot in any way affect the liability of the defendant, Richard.

The Chancellor does not think the plea of limitations can avail the defendant. Mrs. Higgins, during whose life these plaintiffs had no title, did not die until a very short time before this bill was filed. If she had survived her husband, the trust would have ceased, and the property have become her's absolutely. Their right, therefore, was wholly contingent until her death, and, consequently, as it seems to me, limitations could not run against them.

But this is not a case in which these parties are proceeding to enforce actively their claim under the decree of December, 1827. They insist that under the sales made in that case or in the other, in both of which this defendant acted as trustee, he received more than his proportion of the trust fund, and they pray that in consequence of such receipts by him he shall not be permitted to participate in the residue. The principle settled in the case of the *Farmers Bank and Iglehart*, decided at December term, 1846, is considered applicable to this, and as affirming the right of the court to withhold from the defendant, Higgins, his proportion of the fund now to be distributed.

It appears by the testimony of the defendant, Higgins, that he acted as manager of this estate for many years, receiving and appropriating the proceeds of the crops partly to his own use, and partly to the use of the other parties, and I think that in conformity with the decision of the Court of Appeals in the case of *Hatton* vs. *Weems*, 12 *Gill & Johns.*, 83, he is entitled

to commissions on the income of the real and personal estate. The allowance as in that case will be seven and one-half per cent. on the income of each.

An order then will be signed consolidating the three cases, and the referring the case as consolidated to the Auditor for the purpose of taking an account to ascertain the amount of the trust fund with which the defendant, Richard W. Higgins, is chargeable according to the principles stated in this opinion. This to be taken from the pleadings and proofs now in the cause, and such additional proofs as the parties may lay before him, for which a reasonable time will be allowed. And if it is desired, the order may also provide for the sale of the remaining trust fund, but no distribution of it in kind can be made until the accounts are stated.

McLEAN and ALEXANDER, for Complainants.
R. W. GILL, for Defendants.

