## *NORTHERN CENTRAL RAILWAY COMPANY **572**
### *v.* WILLIAM H. KEIGHLER, J. Hall Pleasants, Anthony Kennedy and I. Nevitt Steele.

*Decided December 18th, 1868.*

CONVENTIONAL TRUSTS ; TRUSTEES' COMMISSIONS.

A Court of Equity will take jurisdiction of a conventional trust and direct its administration, on application of the trustee or a party in interest where there is any difficulty or complication likely to arise in the execution of the trust, or any question of dispute as to the powers or duties of the trustee, or as to the rights of the parties beneficially interested in the trust. (*a*)                                                   p. 579

Commissions may be allowed to a conventional trustee although not expressly provided for in the instrument creating the trust; but in the absence of such provision, except in the event of a sale of the trust property, where the labor performed by the trustees demanded very little of their time, and in discharging the trust, which was in its nature somewhat of a public character, they were engaged in subserving great and important public interests, commissions will not be allowed. (*b*)                                                              p. 580

Appeal from the Circuit Court of Baltimore City.

The appellant having found it necessary and having determined to raise the sum of two million five hundred thousand

---

(*a*)  And if such trustees voluntarily subject themselves to the jurisdiction of a Court of Equity, whatever their powers were under the instrument creating the trust, if the trust is before the court, and a decree is passed, their powers are thenceforth so far changed that they must have the sanction of the court for all their acts; *Abell v. Abell,* 75 Md. 64.

(*b*)  See *Abell v. Brady,* 79 Md. 98; *Sanderson v. Pearson,* 45 Md. 484-485; *Ringgold v. Ringgold,* 1 H. & G. 56; *Whyte v. Dimmock,* 55 Md. 455.  As to the rate of commissions to conventional trustees, see *Abell v. Brady,* 79 Md. 99; *Denmead v. Denmead,* 62 Md. 321; *State v. Banks,* 76 Md. 146.  But where the instrument creating the trust fixes the rate of compensation for the trustee, that rate will usually be allowed; see *Tome v. King,* 64 Md. 180; *Herzberg v. Warfield,* 76 Md. 450.  For an exhaustive exposition of the law and practice in regard to the whole question of *Commissions,* see Miller's Equity Procedure, ch. XXVIII.

dollars, by the issue of its bonds to that amount, in sums of one thousand dollars each, to the number of twenty-two hundred, and of five hundred dollars each, to the number of six hundred, did on the 20th of December, 1855, by deed of mortgage convey to the appellees, Keighler, Pleasants and Kennedy, and to William E. Mayhew, since deceased, all of its property, in trust for the payment of these bonds.

By the terms of the mortgage, the trustees in case of default in the payment of the principal and interest of the bonds, or of any of them, were authorized to sell the mortgaged property, and apply the proceeds; " firstly, to the payment of all necessary expenses and *reasonable commissions* attending said sale; secondly, to the payment of the principal and interest of said bonds or so much thereof as might be unpaid; and thirdly, to **573** return the surplus, if any, to the appellant." Until *default, the appellant was to retain possession of the mortgaged property, and was authorized to sell portions thereof, with the consent of the trustees, who were empowered to require from time to time, a conveyance to them for the purposes of the trust of all property acquired by the appellant. The mortgage provided that on payment of the principal and interest of the bonds, it should become null and void, and the trustees and their successors should be accountable each for himself and his own acts only, and not for the acts of his associates unless assented to; it also provided for the payment by the appellant of one per cent. per annum to the trustees to be by them invested, first, in purchasing and retiring from circulation the bonds, if they could be purchased at or under their par value, and if not, then in safe stocks or other securities, to be, with the interest thereof, set apart as a sinking fund for the payment of the bonds and interest at their maturity; it further provided for the filling of vacancies which might happen in the number of the trustees—such vacancies to be filled by persons to be nominated by the remaining trustees and approved by the appellant. The appellee, I. Nevitt Steele, was duly appointed a trustee in the place of William E. Mayhew, who died on the 10th of April, 1860. The bill in this case which was filed by the appellees on the 11th of March, 1865, alleged that the duties imposed on them by the mortgage of the 20th of December, 1855, were very important; that the whole amount of $2,500,000, of bonds had

been issued in conformity with the deed; that they had faith-fully performed the duties required of them, and in so doing had incurred responsibility and been obliged to devote personal care, labor and attention thereto; that they held meetings when-ever it was necessary; kept regular books and furnished annual accounts to the appellant, for security of all parties interested; that every bond before it was issued was countersigned by one of the trustees; and all bonds which they hold for the sinking fund, were on being received, stamped by them with the fol-lowing words: " Purchased and retired from *circula- **574** tion by the trustees of the sinking fund of this loan;" that the appellant was largely in arrears to them in payment of its an-nual dues, until January, 1863; and during all that period they frequently demanded and made efforts to collect the amounts due; that they had on hand in bonds, $238,000, and $521.23, in cash; that the bonds were all coupon bonds, the interest on which had to be collected semi-annually; and the custody and care of so many bonds, the collection of the interest and re-in-vestment of the money, involved much labor as well as care and responsibility; that the trust must continue from the date of the deed, of the 20th of December, 1855, to the time when said bonds were payable, to wit: the 1st of July, 1885, a period of twenty-nine years and six months, when the sinking fund would consist of about two millions of dollars.

The appellees prayed that they might be allowed a commis-sion on all the annual instalments received and to be received by them under the deed of mortgage, and also, on all the divi-dends and income received or to be received by them on the sinking fund in their hands, and that the trusts might there-after be administered under the direction of the Circuit Court.

The appellant answered and objected to the jurisdiction of the court; it also urged that there was no provision in the deed of mortgage which authorized the appellees to make the demand set forth in their bill of complaint; and further, that the bond-holders were interested in the trust funds, and should be made parties to the proceeding. The appellees accordingly filed their supplemental bill, in which they alleged that, as the bonds were coupon bonds, payable to bearer, it was impossible to ascertain who were the holders thereof; that very many resided out of the jurisdiction of the court, and many out of the State; that their

number was so great, that if the obligation were imposed on the appellees to proceed against them all, such would be the interminable delays and inconveniences as would amount to a **575** practical *denial of justice; that all the expenses should be paid out of the trust funds, and that the interest therein of the bondholders was properly represented by the appellant— nevertheless, the appellees made certain persons, whom they discovered to be bondholders, parties.

This bill was duly answered by the appellant. Certain testimony was taken under a commission, and after consideration, the court (Alexander, J.,) passed a decree, allowing the appellees a commission of two and a half per cent. on the moneys received, and to be received and invested by them—to be retained out of the trust fund—and requiring the trust to be afterwards administered under the direction of the court.

From this decree, the present appeal was taken.

The cause was argued before Bartol, C. J., Nelson, Stewart, Miller and Alvey, JJ.

*Daniel M. Thomas* and *William Henry Norris,* for the appellant:

The trustees' right to commissions in this case is negatived by the deed itself, which expressly provides for compensation in the event of *a sale,* and the failure to do so in any other event is *strong,* if not *conclusive,* evidence of an *intent* to give no compensation *unless* a sale is effected. The same intention is further indicated by the fact that the mortgage provides " that on payment of *the principal and interest* " of the bonds, the mortgage should become null and void; whereas, in the event *of a sale,* the proceeds were to be applied, " *firstly,* to the payment of all *necessary expenses* and *reasonable commissions;*" " *secondly,* to the payment of the principal and interest of said bonds," etc.

The decree provides that the commissions shall be paid to or retained by the trustees " out of any trust moneys now in their hands, or which may hereafter come into their hands, as trustees under said deed." This provision is in direct contravention **576** *of the terms of the mortgage, which requires that the money paid by the company to the trustees be received and

*invested* by them in the manner therein prescribed.   So much, therefore, of their receipts as they do not so invest will be so much of the trust funds diverted from the plainly expressed purposes of the trust, to the manifest prejudice of the bond-holders, whose security will be to that extent impaired.   And the bondholders most interested in this question are not the present holders, but those who shall be such *at the maturity of the bonds,* who cannot be substantially represented or bound by any action of the court at this time, and, therefore, this suit is prematurely brought.   *Powell v. Wright,* 7 Beavan, 444, 450.

Their possible chances of foreclosing the mortgage, and the heavy commissions to be received in that event, was the original consideration which induced the trustees to accept the trust. And at present, and for the future, the very light duties connected with the office, are amply compensated for by the dignity and honor of the position.   Numbers of trustees hold similar positions under railway mortgages like this without receiving or demanding compensation.   Responsible men have been found thus far to perform these duties gratuitously.   *Constant v. Matteson,* 22 Ill. 559; *Warbass v. Armstrong,* 2 Stockton Ch. 263; *Wetmore v. Brown,* 37 Barb. 133.

The deed of mortgage is not silent on the subject of commissions, but provides for their allowance in the event of a sale, and, therefore, it is reasonable to suppose that if the appellant had intended that they should be allowed in any other event, that also would have been specified in the mortgage.   The trust is not an ordinary trust, and if compensation were intended for the duties to be performed, it is most natural to suppose it would have been so expressed.   The duties are not those of an ordinary trustee.   And although mortgages of this character are now of frequent occurrence, they have never heretofore been regarded as entitling the *trustees under them to **577** compensation except where it is provided for in the deed itself.

The decree is erroneous also in taking future control of the trust, as it will involve unnecessary trouble and expense.   If it be proper to allow commissions to the trustees, that can be done without having an account of the trust stated annually, " or oftener," in the Circuit Court.

*Frederick W. Brune,* for the appellees:

Trustees under a deed of trust are always entitled to compen-

sation where actual services and labor are performed by them, and the compensation should be in proportion to the service and labor performed and the responsibility incurred. The compensation allowed in this case was reasonable and proper, taking into consideration the service performed and responsibility incurred, being one-half of the lowest commission allowed to executors and administrators, by law, (1 Code, Art. 93, sec. 5,) and considerably less than the commissions which for many years have been allowed to trustees appointed to sell property by decree of court, and less than the poundage fees allowed to Sheriffs on sales of personal property. (1 Code, Art. 38, sec. 28.)

Where statutory provisions have fixed the rate of commissions to be allowed to executors, guardians and such like officers, Courts of Equity will adopt a similar rate in allowing compensation to trustees, whether of their own appointment or constituted under a trust deed, in the absence of any previous rule of court or provision in the deed.

Where there is no statutory rule applicable to the subject, and no rate fixed in the deed, five per cent. is generally recognized as the usual allowance on sums received and paid out, or invested by trustees or other persons acting in a fiduciary capacity. White & Tudor's Eq. Cases, 71 Law Lib. 353-376; *Ringgold v. Ringgold,* 1 H. & G. 11, 27, 83; *Hatton v. Weems,* 12 G. & J. 108-111; *Diffenderffer v. Winder,* 2 Bland, 166, 205, **578** 207, 208, and 3 G. & J. 328, *348; *Bentley v. Shreve,* 2 Md. Ch. 218; *Higgins v. Higgins,* 4 Md. Ch. 245; *Abbott v. Balt. & Rapp. Steam Packet Co.* 4 Md. Ch. 312, 316; *Prevost v. Gratz,* 3 Wash. C. C. 434; *Meacham v. Sternes,* 9 Paige, 400, 403; *Sherrill v. Shuford,* 6 Ired. Eq. 228; *Barney v. Saunders,* 16 How. 542; *Spangler's Estate,* 21 Pa. St. 336; *Burney v. Spear,* 17 Ga. 223-5; *Dixon v. Homer,* 2 Met. 422; Lewin on Trusts, 454-467, (97 Law Lib.); Hill on Trustees, 570-577.

Unless there was manifest error in the allowance by the court below, this court will not interfere with or alter it; such allowance being properly within the discretion of the inferior tribunal.

There is nothing in the deed to exclude the legal presumption that trustees are entitled to compensation for work and labor performed and responsibility incurred.

If it were necessary to bring the bondholders before the court, they are sufficiently represented by those who were made defendants. Story's Eq. Pl. secs. 94-97; Redfield on Railways, 582, 583.

Bartol, C. J., delivered the opinion of the court.

The appellees, complainants below, are trustees, acting under the deed of mortgage, dated the 20th of December, 1855. They pray in their bill—1st. That they may be allowed a just compensation for their time and trouble in executing the trust, in the form of a commission upon the trust fund; 2d. That the court shall take jurisdiction of the trust, and that the same may be administered under the direction of the court. There is also a prayer in the bill for general relief.

The Circuit Court granted the specific relief asked for—decree an allowance of commissions to the trustees, and directed that the trust should be administered under the direction of the court; requiring the trustees to make full report annually, or oftener, if they see fit, of their proceedings in the matter of the trust, for such action thereon as to the court may seem proper.

*This appeal is from that decree.    **579**

The power of a Court of Chancery to take jurisdiction of a conventional trust, and direct its administration, is unquestionable, and an application for that purpose, by the trustee, or a party in interest, ought not to be refused. Where there is any difficulty or complication likely to arise in the execution of the trust, or any question of dispute as to the powers or duties of the trustee or the rights of the parties beneficially interested in the trust. In this case, none of these exist or are suggested by the bill.

From a reference to the terms of the mortgage, it appears that unless the contingency should happen under which a sale of the property, mentioned in the deed, would become necessary, which is not averred as likely to occur, the duties of the trustees are few and simple, and plainly defined by the deed. They have been performed hitherto without difficulty; no controversy has arisen, or is likely to arise with regard to them, requiring the intervention of the court.

Under these circumstances, we do not perceive any sufficient reason why the trust should be brought into a Court of Chancery, thus subjecting the fund which, by the deed, is dedicated to other purposes, to the needless burden and costs of such a proceeding. The main purpose of the bill was, no doubt, to obtain the decision and order of the court allowing to the trustees the commissions claimed by them; and we are required, under this appeal, to determine whether the decree of the Circuit Court in that particular was correct.

In England, the general rule is, that " a trustee will not be permitted to make any charge for his trouble or loss of time, or for his services in the administration of the trust, unless the trust instrument expressly empowers him to make such a charge." Hill on Trustees, 574, m.; 2 White & Tudor's Eq. Cases, 71 Law Lib. 338, 339, note.

This rule, however, does not prevail in Maryland; it has been held in several cases that, by analogy to our statutes, which allow commissions to executors, administrators, guar-**580** *dians and trustees under judicial sales, commissions may be allowed to a conventional trustee, although not expressly provided for in the instrument creating the trust. The cases of *Ringgold v. Ringgold,* 1 H. & G. 11 ; *Hatton v. Weems,* 12 G. & J. 108; *Diffenderffer v. Winder,* 3 G. & J. 328; *Bentley v. Shreve,* 2 Md. Ch. 218; *Higgins v. Higgins,* 4 Md. Ch. 245, and *Abbott v. Steam Packet Co.,* 4 Md. Ch. 312, referred to in the argument of the appellees, show the rule on this subject which exists in this State. Such commissions will ordinarily be allowed where the trustee has performed his duty, unless its performance has imposed no labor or trouble which justly entitles him to compensation, or there is something in the nature of the trust itself, or in the terms of the trust instrument to show that no commissions were intended to be allowed or charged.

In this case we think the evidence discloses that for the services which have hitherto been rendered by the trustees, it was not the intention that any commissions should be demanded by them out of the trust fund. The trust is in its nature somewhat of a public character, and in its execution the complainants were engaged in subserving great and important public interests. Such trusts are confided only to persons of known intelli-

gence and high character, and are often accepted from motives of public spirit, without any expectation of pecuniary reward.

The deed provides in terms for a sale of the property by the trustees in a certain contingency, and in that event, provision is made for commissions as a compensation for their labor and services in making the sale. If it were supposed that the trust was accepted with the motive of receiving pecuniary reward, it is doing no violence to the terms of the deed to say that the prospect of receiving the large commissions in the event of a sale, was regarded as a sufficient consideration for accepting the trust.

The deed is silent as to any commissions being allowed for such services as devolved upon the trustees in case no sale should be made. According to the proof in the record, they *were such as imposed very little labor on the trustees, **581** and demanded very little of their time. And it would be somewhat difficult to say what would be a just and reasonable compensation therefor. But apart from this consideration, we think, upon the construction of the deed, the intention of the parties was that the trust fund, which should come into the hands of the trustees, should be dedicated to the purposes of the trust, without being diminished by any charge for commissions.

We will sign a decree reversing the decree of the Circuit Court, and dismissing the bill without costs.

*Decree reversed and bill dismissed.*