TERMINAL FREEZING AND HEATING COMPANY
*vs.*
GEORGE WHITELOCK AND W. H. DeCOURSEY
WRIGHT.

*Counsel Fees: certificate as to reasonableness.    Compensation
out of common fund.    Appeals: certain testimony not
in record; when appeal not dismissed.*

Where the reasonableness of a fee has been certified to by
prominent and experienced members of the bar, and the
judge, who was familiar with all the circumstances under
which the services were rendered, testifies that the allowance
was reasonable and proper, the Court of Appeals will not dis-
turb the allowance, unless it seems entirely out of proportion
to the services rendered.    pp. 414-415

While, in general, when compensation is allowed out of a com-
mon fund for expenses incurred and services rendered in be-
half of a common interest, it is upon the principle of repre-
sentation or agency, yet there is no objection to paying a fee
out of a common fund to the attorneys of a committee of
bondholders, who filed a bill and rendered services in the
interest of all the bondholders, both those represented by
others, as well as those whom they themselves represented,
merely because there was another and hostile committee of
bondholders representing certain other holders of bonds.
pp. 417-418

An appeal will not be dismissed on the mere ground that certain testmiony had been omitted from the record, when the missing testimony was supplied by the certificate of the judge before whom the proceedings were had, and when it appeared that the appellee was not prejudiced by the omission.    p. 418.

*Decided April 10th, 1913.*

Appeal from Circuit Court No. 2 of Baltimore City (STUMP, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Clarence K. Bowie,* for the appellant.

*John B. Deming,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from an order of Circuit Court No. 2 of Baltimore City overruling exceptions to the allowance by the auditor's account of a fee of $5,000.00 to the appellees and ratifying said account to that extent.

The fee was allowed by the auditor, in accordance with an order passed by JUDGE HARLAN while presiding in said Court, out of the general fund arising from the sale, under the decree of that Court, of the property of the Baltimore Refrigerating and Heating Company of Baltimore City, and the grounds of the exceptions to said allowance are, first, that it was not a proper allowance out of said fund; and, second, that the amount of said allowance is excessive.

It appears from the record in this case, and the records in previous appeals, that the Baltimore Refrigerating and Heating Company of Baltimore City in 1902 executed to the Continental Trust Company, as trustee, a mortgage to secure an issue of two thousand bonds of the par value of $1,000 each. Receivers were appointed for the Refrigerating Company in 1908 and they were authorized by the Court to conduct the business of the company until the further order of the Court. After the appointment of receivers, two committees for bondholders of said company were appointed, one called the Homer-Betts Committee, representing a large majority of the bonds, and the other, the Middendorf-Heyward Committee, which represented a minority of the bondholders. The conduct of the business of the company by the receivers resulted in a great deal of litigation, and in December, 1909, certain of the bondholders of the company filed a bill of complaint against the Refrigerating Company and the Trust Company, alleging that the Trust Company had improperly certified and issued a number of bonds of the Refrigerating Company, and that it was not a proper party to act as trustee, and asking for the removal of the Trust Company as trustee for the bondholders. The Trust Company in answer to that bill alleged that all the bonds had been properly issued and that it had faithfully discharged its duties. That controversy resulted in an order of court restraining the Trust Company, alleging that the Trust Company had improperly close the mortgage. According to the evidence in this case the earnings of the Refrigerating Company as conducted by the receivers were not sufficient to pay the interest on the bonds, and one of the witnesses states that they were "diminishing" instead of increasing, and that it became apparent to the members of the Middendorf-Heyward Committee that in order to protect the interest of all the bondholders it would be necessary to sell the property of the company. Accordingly, on the 3rd of November, 1910, a bill was filed by the members of the Middendorf-Heyward Committee and Robert

M. Spedden, a bondholder of the Refrigerating Company, against the Refrigerating Company, the Continental Trust Company and the members of the Homer-Betts Committee for a sale of the property of the Refrigerating Company. In this bill the plaintiffs sued for themselves as well as for all other holders of the bonds of the Refrigerating Company who would come in and contribute to the expenses of the suit. On the 12th of November, 1910, the plaintiffs in that bill filed a petition for a sale of the property before final decree. The petition was set down for hearing, testimony was taken before the Court and on the 7th of December, 1910, an order was passed directing a sale of the property and appointing the Continental Trust Company trustee to make the sale. That decree recites that parties representing eleven hundred and eighty-seven of the twelve hundred and seventy-seven outstanding bonds were before the Court consenting to the sale, and it appears that counsel for the Homer-Betts Committee approved the form of the decree passed. One of the appellees says in his testimony in reference to the passage of said decree: "there has been some reference to the attitude of the majority committee. That committee itself, on the 7th day of December, 1910, when this order of sale was passed, made formal application by letter, equivalent to a petition, to JUDGE STOCKBRIDGE asking that the Continental Trust Company, which he had appointed trustee or was about to appoint trustee under that order, should sell this property in this case under the order which he had passed. They united in it, but, as JUDGE STOCKBRIDGE pointed out himself in his testimony here the other day, until he had announced his views at the hearing after the case had gone on several days, they never even gave a qualified consent to the sale of the property under the working out of the rights of the parties in that way." The conditions and circumstances under which the bill of November 3rd, 1910, was filed and the decree of December 7th, 1910, was passed, are stated by JUDGE STOCKBRIDGE, who testified

at the hearing of the exceptions to the fee of the appellees, as follows: "That in or about April, 1910, he heard a demurrer to the bill of complaint in a case then pending in the Circuit Court of Baltimore City, entitled *Meyer and Stern* v. *The Continental Trust Company et als.,* which case involved the financial affairs of the Baltimore Refrigerating and Heating Company, so far as the issuance and trustees' certification of certain bonds were concerned; that the hearing of that demurrer was the first matter arising out of the insolvency of the Refrigerating Company which had come before him as one of the judges of the Supreme Bench of Baltimore City; that during the year 1910 he was the presiding judge in Circuit Court No. 2 of Baltimore City, in which Court at that time there was pending a certain case entitled *Tome* v. *The Baltimore Refrigerating and Heating Company,* wherein receivers had been appointed for the defendant company at the end of 1908 or during the early part of the year 1909, that the receivers had been authorized to continue the business of that company and were operating same when he was assigned to that Court; that the bill of complaint in the receivership case contained no prayer for sale, and neither did the bill of complaint in the *Meyer and Stern case;* that one of the important legal questions growing out of the receivership was the power of the Court to authorize the receivers to issue receivers' certificates as prayed by the receivers, with the sanction of the Homer-Betts Committee of bondholders of the company; that the Middendorf-Heyward Committee and Robert M. Spedden opposed the issuance of certificates by the receivers; that he, JUDGE STOCKBRIDGE, decided about June, 1910, that the Court had not such power with respect to companies of the character of the defendant company for the purposes prayed; that in or about October, 1910, he heard an application for removal of the receivers and decided to appoint an additional receiver in the place of Fred W. Feldner, deceased; that from his observation of the receivership and the dis-

asterous results of carrying it on, he was convinced that an early sale of the property was absolutely imperative; that he had several times suggested this view to the original receivers and also to the counsel of the Homer-Betts Bondholders Committee, but had been unable to get them to take any action; that inasmuch as there could be no sale of the property in either of the pending cases, as neither bill prayed for a sale, in the fall of 1910, he orally directed Messrs. Whitelock and Wright, counsel for the Middendorf-Heyward Committee and Captain Spedden, to file a new bill for the sale of the property so that the receivership might be closed, and the bill in the case now pending in this Court entitled *Middendorf and Heyward et al.* v. *The Baltimore Refrigerating and Heating Company et al.*, 117 Md. 443, (being the case in which JUDGE STOCKBRIDGE's testimony was given, and in which the company's assets were subsequently sold), was accordingly filed by Messrs. Whitelock and Wright as solicitors. That subsequently to the filing of the bill of complaint a petition was likewise filed with his approval by the same counsel for the same plaintiffs, asking for a preliminary order of sale of the property prior to final decree, and after a hearing and argument, he being convinced that a decree for sale must be ordered at final hearing, an order for a sale was passed by him, the witness, on December 7, 1910. That both committees requested the trustee to proceed to make the sale under the Court's order."

The property of the Refrigerating Company was sold by the trustee under the order or decree of December 7th, 1910, for $503,000.00, but the purchaser having failed to comply with the terms of sale the property was resold under an order of Court, at the risk of the purchaser, for the sum of $261,000.00; the sale was finally ratified, and the case was referred to the auditor for a distribution of the proceeds of the sale. The appellees then filed a petition, setting out the circumstances under which the bill of November 3, 1910, and the petition for an immediate sale of the property were filed, and praying to be allowed a reasonable fee for their

services as counsel for the plaintiffs and petitioners in said bill and petition. There was attached to this petition a certificate of two members of the Baltimore Bar certifying that a fee of $5,000.00 would be a reasonable and proper allowance for the services mentioned in said petition. The Court passed an order directing the auditor to allow said fee "subject to the usual exceptions," and it was accordingly allowed by the auditor out of the proceeds of the sale. The exceptions to the allowance of this fee were filed by the Terminal Freezing and Heating Company, as the assignee of the ten hundred and thirty-one bonds represented by the Homer-Betts Committee.

In regard to the objection that the fee is excessive, it seems only necessary to say that all the evidence in the case is to the effect that it is a reasonable and proper allowance. In addition to the certificate of two prominent and experienced members of the bar, of high standing, certifying to the reasonableness of the allowance, JUDGE STOCKBRIDGE, who was familiar with the circumstances under which the services were rendered, and the character and extent of such services, testified that the allowance was a reasonable and proper one under the circumstances. The appellant, with every opportunity to do so, offered no evidence of the value of the services. Under such circumstances, unless the fee was entirely out of proportion to the services rendered, we would not be justified in holding that the learned judge who authorized the allowance in the first instance, and the learned judge who sustained the allowance after hearing the exceptions were in error. In the case of *Title Company* v. *Burdette,* 104 Md. 671, JUDGE PEARCE, in speaking of a similar objection to the fee allowed in that case, said: "The objection that the allowance is excessive will be first considered. No evidence was taken upon this subject, though there was ample opportunity to do so, if it had been desired. It rests upon the certificate of the experienced counsel of high standing, and upon the presumed discretion of the distinguished judge who allowed it. Under these circumstances, whatever opinion we

might entertian of the matter, we would not feel justified in disturbing the amount, unless the disproportion of the allowance to the services rendered, was so great as to indicate that the judge below failed to exercise a sound and reasonable discretion, and we can not say that."

In support of the other objection it is urged by the appellant that "when compensation is allowed out of a common fund for expenses incurred and services rendered in behalf of the common interest, it is upon the principle of representation or agency," and that the evidence in this case shows that the plaintiff in said bill and petition for a sale of the property and the Homer-Betts Committee, who then represented the interests now owned by the appellant, "were hostile to each other and considered their interests in conflict," and that, therefore, the appellees can not be said to have represented the Homer-Betts Committee. The evidence does undoubtedly show that the two committees were hostile in the sense that they did not agree as to the course to be pursued by the receivers or upon any plan for a sale of the property. But the bill filed on the 3rd of November, 1910, was not filed *against the interests* of the Homer-Betts Committee, representing a majority of the bondholders, but for the benefit of all the bondholders of the Refrigerating Company. It did not, therefore, as far as the record discloses, antagonize any *interest* of the Homer-Betts Committee. On the contrary, whatever benefit was derived from the sale of the property was shared equally by all the bondholders. In the case of *B. & O. R. R. Co.* v. *Brown,* 79 Md. 442, one of the cases relied on by the appellant, JUDGE McSHERRY, after stating, "when compensation is allowed out of a common fund for expenses and services rendered in behalf of the common interest, it is upon the principle of representation or agency," then goes on to explain the meaning of that statement, and says: "If, then, the learned, able and accomplished lawyers who claim the right to be compensated out of the common fund, now in Court for distribution, occupied during the prior litigation to which we have alluded, the

same relation towards the owners of the whole of the fund
that they confessively held towards the 1,165 members who
did not sign, there could, we think, be no doubt that their
claim should be allowed. But the railroad company repre-
senting the 19,200 members, who joined the Relief Depart-
ment, was in a position of antagonism to most of the de-
mands made in behalf of the non-assigning members; and
whatever was gained as the fruit of the litigation for these
dissenting members was not equally gained for the railroad
company, but actually wrested from it; with the exception of
that which was conceded by it. So that the attitude of the
1,165 members was directly hostile to the railroad company,
and the 19,200 members whom it represented; and there was
in consequence, no community of interest between them.
There could therefore be no presumption that these gentle-
men while acting for the 1,165 members were also, at the
same time, representing the railroad company, which they
were in fact vigorously antagonizing. A reference to some
of the facts will make this more apparent." Applying the
rule as thus explained by the Court in that case to the case
at bar, it is quite evident that the attitude of the plaintiffs
in the bill referred to was not antagonistic to any interest
represented by the Homer-Betts Committee. While, as we
have said, the two committees were, in one sense, hostile to
each other, there was in fact a community of interest be-
tween the bondholders they represented, and the bill was
filed to subserve the common interest. A case directly in
point with the one we are here considering is the case of
*Davis* v. *Gemmell,* 73 Md. 530, in which the same learned
judge, quoted above, wrote the opinion of this Court. In
that case Wm. A. Brydon recovered a judgment against the
Baltimore and Ohio Railroad Company amounting to $75,-
000.00 for a breach of a contract in regard to the purchase
of coal from him by the railroad company, and the judgment
was entered to the use of Henry G. Davis & Co. After the
judgment had been assigned, Thomas Gemmell and Malcolm
Sinclair filed a bill in the Circuit Court of Baltimore City

against Henry G. Davis & Co., Wm. A. Brydon, the North Branch Company and the Baltimore and Ohio Railroad Company, alleging that the judgment, although recovered in the name of Brydon, in fact belonged to the North Branch Company of which Brydon, Gemmell and Sinclair were stockholders—Brydon owning a majority of the stock and Gemmell and Sinclair the remainder, and that the assignment of the judgment to Davis & Co. was fraudulent. Brydon resisted the bill claiming that the judgment did not belong to the North Branch Company. A decree was finally passed declaring that the $75,000.00 judgment was the property of the North Branch Company, and referring the cause to the auditor to state an account distributing the amount of the judgment and interest. The bill filed by Gemmell and Sinclair was filed by them as stockholders against Brydon, who owned a majority of the stock of the North Branch Company, and resulted in securing for said company and its stockholders the amount of said judgment and interest. Upon exceptions to the allowance of a fee to counsel for Gemmell and Sinclair for services rendered in that case, this Court held that as their labor resulted in preserving the fund for the North Branch Company, they were entitled under the circumstances to be allowed a fee out of that fund. In that case, as in this, the bill was filed by those having the same interest in the fund as the defendant (Brydon), and notwithstanding Brydon resisted the claim that the judgment belonged to the company, the fee was allowed upon the theory that counsel for Gemmell and Sinclair in fact represented the interest of all the stockholders, who received the fruits of their labor. In *Title* v. *Burdette, supra,* JUDGE PEARCE, referring to the case of *Davis* v. *Gemmell,* and to the fee allowed counsel for Brydon, says that the Court in that case "justly and properly refused to sustain their exceptions to the allowance of a counsel fee out of the common fund, because, in the language of *Wilson* v. *Kelly* (30 South Car. 483), cited above, 'a contract of employment was super-

induced by the law upon the facts of the case' " and JUDGE McSHERRY in *Davis* v. *Gemmell,* after disposing of the exceptions to the fee allowed Brydon's counsel, said: "A somewhat similar principle is applicable" to the fee of counsel for Gemmell and Sinclair. In addition to the features of the case at bar to which we have just referred, it appears that the Homer-Betts Committee finally consented to the passage of the decree for the sale of the property, and we think, upon every principle of justice and equity, and upon the authorities we have cited that the appellees are entitled to a fee out of the fund arising from said sale.

A motion was made to dismiss the appeal in this case on the ground that the record sent to this Court did not contain the testimony of JUDGE STOCKBRIDGE. It appears that when the clerk of the Court below was instructed to make up the record, the stenographic notes of JUDGE STOCKBRIDGE's testimony could not be found by the stenographer, and for that reason the testimony was not included in the record. This testimony has, however, been supplied by the certificate of the judge who presided at the hearing of the exceptions, and, under such circumstances, we would not be justified in dismissing the appeal on the ground that it was omitted from the record in the first instance, the appellees not having been prejudiced by such omission.

*Order affirmed, with costs.*