HIRAM W. FRIEDENWALD, BENJAMIN B. FRIE-
DENWALD, JACOB H. FRIEDENWALD, ADMIN-
ISTRATORS, C. T. A. OF THE ESTATE OF JOSEPH
· FRIEDENWALD, DECEASED,

*vs.*

EDWARD H. BURKE, SPECIAL ADMINISTRATOR.

*Wills: caveat; special administrator and attorney to represent
infants; attorneys' fees.*

A caveat was filed to the last will and testament of Joseph
Friedenwald, dated December, 1910, and was contested on the
ground that the testator at the time of the execution of said
instrument was not of sound and disposing mind; a previous
will executed in 1903 was then offered for probate, and caveat
thereto filed by some of the children of the decedent against his
other children and grandchildren. The caveatees in their answer
stated reasons why they did not wish to defend the will, but sug-
gested that the grandchildren and their descendants born and
unborn, had contingent interest under the will and should be
represented by some one appointed by the Court to defend the
will at the cost of the estate to the extent that such person in the
exercise of his independent judgment in view of all the circum-
stances shall be deemed proper. Edward H. Burke, an attorney
at law, was so appointed, charged with the duty of so defending

the will.   Issues were sent to the Circuit Court for Baltimore
County for trial, and the verdict of the jury being in favor of
the caveatees on the issue of undue influence the will was set
aside.   Burke, the special administrator, after setting out his
services as aforesaid petitioned the Court that the administrators
*c. t. a.* be required to pay him such sum as the Court should find
to be reasonable.   The Court passed an order directing that
$15,000 be paid him for the services rendered the estate as special
administrator *pendente lite* and as attorney.   The administrators
appealed and the Court of Appeals found that in view of all
the facts of the case, and of the services rendered that $8,000
was a proper fee for Burke's services as special administrator
and as attorney.        ,                                    p. 526

While the fact that a client is rich, can afford no justification
for a charge by counsel in excess of what is a reasonable com-
pensation for his services, the amount involved in a controversy
bears a very different relation to the question and constitutes
in many instances, in a large degree, the measure of the import-
ance of the case and the responsibility of counsel.        p. 526


*Decided June 25th, 1914.*


Appeal from the Orphans' Court for Baltimore County.


The facts are stated in the opinion of the Court.


The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.


*Vernon Cook* and *Edgar H. Gans* (with whom was *Louis
N. Frank* on the brief), for the appellants.


*T. Scott Offutt,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This is the second appeal in this case, and it is only necessary to state briefly the circumstances under which the controversy arises.

Joseph Friedenwald died in December, 1910, leaving an estate of about four millions of dollars. After his death three wills were found, one dated December, 1910, one April, 1903, and the other August, 1875. A caveat was filed by some of his children to the will of 1910, and a long and vigorously contested trial of the issues resulted in a verdict in favor of the caveators. The will of 1903 was then offered for probate in the Orphans' Court of Baltimore County, and a caveat thereto was filed by some of the children of the deceased against his other children and his grandchildren. In answer to the petition of the caveators the caveatees stated: "These respondents further say that the said Joseph Friedenwald left what purported to be a last will and testament, dated the 12th day of December, 1910, which was probated in common form in this Court but upon caveat being filed and issues being framed, it was determined by a jury sitting in the Circuit Court for Baltimore County, that the said will was invalid because the said Joseph Friedenwald was at the time of its execution not of sound and disposing mind, and did not understand the contents thereof. Although these respondents are legally bound by the verdict of the jury and the judgment of this Court thereupon, still they believed then and believe now notwithstanding said verdict that the said Joseph Friedenwald was of sound and disposing mind at the time he executed the will of December 12th, 1910, and understood the contents thereof; that he was just as competent to make a will on December 12th, 1910, he was on April 24th, 1903, and that, therefore, these respondents do not believe that the will of 1903 expresses the real and final intentions of their father and grandfather with respect to his property, and they are not interested in defending it; but inasmuch as all the charitable and small

pecuniary legacies will be paid by the family of the said
Joseph Friedenwald, even though the will of 1903 is set
aside, the only persons who might be interested in sustaining
the will of 1903 are the grandchildren of the late Joseph
Friedenwald, and their descendants, born and unborn, who
have contingent interests under said will, and those inter-
ests should be represented by some person appointed by the
Court to defend the will, at the cost of the estate, to the
extent that such person, in the exercise of his independent
judgment, in view of all the circumstances of the case, shall
deem proper." On the 9th of January, 1913, the Orphans'
Court passed the following order: "Maryland, *sct.*: The
State of Maryland—To all persons to whom these presents
shall come, Greeting: Know ye that Joseph Friedenwald
died leaving an alleged will dated April 24th, 1903, which
has been offered for probate in this Court and a caveat has
been filed thereto, and that someone should be appointed by
this Court to defend the said alleged will, at the cost of the
estate, in the interest of the grandchildren of the said Joseph
Friedenwald and their descendants, born and unborn, who
may have contingent interests under said will, to the extent
that such person in the exercise of his independent judgment
in view of all the circumstances of the case shall deem
proper. Therefore Edward H. Burke is hereby appointed
a special administrator *pendente lite* charged however with
the sole duty of defending the said alleged will, to the extent
that he in his independent judgment shall deem proper and
to secure for it admission to probate if that is attainable on
full and fair investigation, and these shall be his letters there-
for which are hereby granted to him." Issues were sent
to the Circuit Court for Baltimore County for trial, and the
verdict of the jury being in favor of the caveators on the
issue of undue influence the will of 1903 was set aside
Thereafter Edward H. Burke, Esq., special administrator,
filed a petition in the Orphans' Court setting out the services
he had rendered as special administrator and as attorney in

defending the will, and praying that the administrators, *c. t. a.,* be required to pay him such sum as the Court determined was a reasonable compensation for such services. There was filed with the petition the certificates of a number of prominent members of the bar to the effect that they were familiar with the services rendered by the petitioner, and that $15,000.00 was a reasonable and proper compensation for same, and on the same day, July 10th, 1913, the Court passed an order directing the administrators, *c. t. a.,* to pay the petitioner that sum "for the services rendered by him to said estate as special administrator *pendente lite.*" The administrators, *c. t. a.,* filed a petition excepting to the allowance on the ground that it was excessive and unreasonable, and praying the Court to rescind said order. At the same time they presented to the Court the form of an order suspending the payment of the amount which the Court refused to sign, and they then appealed from said action of the Court and from the order of July 10th. On appeal we remanded the case, without affirming or reversing the order of the 10th of July, in order that the exceptions to said allowance might be set down for a hearing and disposed of by the Orphans' Court after the parties had an opportunity to offer evidence in support of their respective contentions. In disposing of the case as then presented, CHIEF JUDGE BOYD, speaking for the Court, said: "We are of the opinion then, that the Orphans' Court had the power to appoint the appellee, and we can have no doubt that they have the power to grant him such reasonable compensation as the services rendered by him justify. The answer of the appellee to the caveat of the will of 1903 suggested the appointment of someone, and the language of that answer was practically adopted in the letters— amongst other things, that some one be appointed 'at the cost of the estate.' As Mr. Burke was an attorney, it was undoubtedly intended that he should act as the attorney in defending the will, as otherwise the Court would have provided for his employing some other attorney. The record

is not very clear as to that; but we take it for granted that the answer filed by the appellee to the petition of the caveators and the other proceedings taken by him were all done in his name as special administrator, and hence he must have acted in both capacities. But, as he did not have charge of the assets of the estate, and could not have been made responsible for them, or any of them, his great responsibility and his real services were those of an attorney, and, in allowing him compensation for his services those facts cannot be ignored. * * * The appellee should be allowed a proper and reasonable compensation for such services as he rendered as special administrator, keeping in mind the facts we have already alluded to, and for such as he rendered as attorney. One of the most delicate duties Courts are called upon to perform is that of fixing the amount of compensation of attorneys in cases in which they are entitled to be paid out of an estate or fund before the Court. It would be difficult to lay down a general rule, to be followed in all cases where such compensation is to be allowed, beyond saying that it must be reasonable and fair. In this case there is a certificate of nine attorneys referred to above, and the Court fixed the amount recommended by them. While a certificate signed by responsible and leading members of the bar is entitled to great weight, it is, of course, not conclusive, and, when an *ex parte* order has been passed fixing the compensation of an attorney, and those interested in the estate promptly object to the allowance, on the ground that it is excessive and unreasonable, and ask that the order allowing it be rescinded, they are entitled to be heard."

When the case went back to the Orphans' Court evidence was produced by the appellee tending to show that the allowance was a proper and reasonable one, while the appellants offered evidence to show that it was excessive and unreasonable. After considering the evidence the Court below passed an order confirming its previous order allowing $15,000.00 as a reasonable compensation for all the services rendered by

the appellee, as special administrator and as attorney, from which order the administrators, *c. t. a.*, have again appealed, and we are now called upon to discharge that delicate duty to which allusion was made on the former appeal.

In determining the question of what is a fair and reasonable compensation to an attorney for his services in any particular case a consideration of the character and extent of those services, the importance of the case and the amount involved is essential to a proper conclusion (*Miller* v. *Gehr,* 91 Md. 709; *De Bearn* v. *Winans,* 115 Md. 139; *Heating Co.* v. *Whitelock,* 120 Md. 408; 4 *Cyc.* 1001, 1004), and as said by the Court in *National Bank* v. *Dulaney,* 96 Md. 159, "such a question is not to be decided simply according to the arbitrary individual opinions of those constituting the trying tribunal. The judicial mind must have respect to the evidence offered for its instruction and guidance."

Mr. Burke states that according to his understanding of his letters it was for him to determine, after an investigation of the facts and an examination of the law, whether the caveat should be resisted or he should allow the will to be set aside in the Orphans' Court; that he accordingly secured from counsel for the caveatees a copy of the evidence produced at the trial of the caveat to the will of 1910, consisting of two thousand typewritten pages; that after a careful reading and study of this evidence, and an examination of the authorities he decided that Mr. Friedenwald was capable of making a will in 1903, and as he had been informed by counsel for the caveators that the ground upon which the will was to be attacked was "testamentary incapacity," he notified counsel for the caveators of the conclusion he had reached and advised them that there would have to be a trial of the case, and that he filed an answer to the caveat as special administrator; that in March counsel for the caveators advised him that they wanted to try the case the following Tuesday in the Orphans' Court, and that he told them that he did not think he could agree to try it in the Orphans' Court, that it

would look like collusion to do so, but that he would think it over; that he then consulted Mr. Peach, one of the officials of the Orphans' Court, and he advised him to try the case in the Circuit Court before a jury, and that he then wrote counsel for the caveators that he would "insist on a trial before a jury," and would prepare issues, and that if he wanted to try the case promptly and would come out to Towson as soon as Court met he would be glad to arrange it; that a few days later counsel for the caveators came to see him and told him that inasmuch as he insisted upon a trial before a jury they would abandon the caveat and would dismiss it as soon as they could see one or two of their clients; that some time later counsel for the caveators came out to Towson and said they were going to try it; that he prepared and filed the petition for issues, and at the same time "submitted a form of issues"; that he, Mr. Gans and Mr. Harley finally agreed upon the issues that were to be sent to the Circuit Court, and arranged with JUDGE DUNCAN to have the case tried on the 30th of June; that he then, in preparing for the trial, made a very careful examination and study of all the Maryland cases, went to see and talked with a number of witnesses, and was fully prepared to defend the will from an attack on the ground of testamentary incapacity, which was the ground that he understood was the one on which the contest was to be made.

At the trial of the case in the Circuit Court, which occupied about two days, the Court granted the prayers offered by Mr. Burke directing a verdict for the caveatees upon all the issues except the issue of undue influence. The appellee states that there was nothing in the evidence produced at the trial of the caveat to the will of 1910 to suggest that undue influence had been exerted on the deceased, and that at the trial of the issues relating to the will of 1903 he was not prepared to offer any evidence in rebuttal of the evidence offered by the caveators showing that the will had been procured by undue influence; that the parties who were charged with

having exerted such influence were three of the caveatees, one of who was, at the time of the trial, in Europe, and all of whom were in favor of setting aside the will; that they were the only persons by whom such evidence could have been contradicted, and that after giving the matter careful consideration, he concluded that it would be useless to call them because he did not believe that they would contradict the evidence adduced by the caveators, and that therefore the only thing he could do, so far as that issue was concerned, was to cross-examine the witnesses and submit the case on the evidence produced by the caveators.

Under the will of 1903 the estate was to be held in trust by the executor during the life of the testator's wife, who was to receive $8,000.00 annually. The trustees were directed, after her death, to pay to each of nine of the testator's children, not including Mrs. Selz and Mrs. Brager, $30,000; $10,000 to each of three grandchildren, children of a deceased child; the income from $20,000 to his daughter, Mrs. Selz, and $1,000 to each of the children of his daughter, Mrs. Brager, living at the time of the death of his wife. The seventh clause directed that after the expiration of five years from the death of his wife, and until twenty-one years after her death, the trustees should pay one-half of the income from the residue of the estate to such of his children and their descendants as were living at the time of the accrual of said income, and upon the expiration of said period of twenty-one years, distribute the corpus of the estate to such of his children and their descendants as were then living, and provided that his daughters, Mrs. Selz and Mrs. Brager, and their descendants should be excluded from the provisions of said clause. Mr. Burke says in his petition that, as the result of setting aside the will of 1903, the will of 1875 was admitted to probate, and the children, and the descendants of the deceased child or children of the testator, thereby secured an immediate distribution of his entire estate, and he says further in his testimony that as both the caveators and the

other children of Mr. Friedenwald, caveatees, desired the will to be broken, the whole responsibility was on him to decide, in the first instance, to what extent the caveat should be resisted, and, after the introduction of the evidence of undue influence, to determine whether the three caveatees who were charged with having exerted such influence should be called to rebut that evidence, and that the fact that he had to bear that responsibility should be taken into consideration in deciding what is a fair compensation for services rendered by him as special administrator and attorney.

Mr. Charles F. Harley, who represented the caveators in the trial of the caveat to the will of 1910, and also in the contest over the will of 1903, after testifying that he thought the fee fixed by the Orphans' Court was "a very reasonable one," gave his reasons for so stating as follows: "Under the law the elements to be considered are, the time and the labor involved, and the amount involved, and the responsibility and diligence and a number of other elements, and looking at those elements, it seems to me that the amount of $15,-000.00 is very moderate. He had about six months' labor in this matter, the estate as exceedingly large, unusually large, and the responsibility was exceedingly great, in my judgment, greater than my own responsibility, and greater than the responsibility, in my judgment, of the distinguished gentlemen on the other side in the first case, it was an unusual responsibility, it was the first time anything of the kind had occured, it was rather establishing a new practice, as suggested by the Court of Appeals in 64 Maryland, the whole situation was an immense question, it involved immense responsibilities upon the shoulders of this member of the bar, and while I was on the other side of the case, my judgment was that he discharged those obligations with integrity and diligence." Mr. Osborne I. Yellott, who examined the testimony of Mr. Burke, the evidence produced at the trial of the issues concerning the will of 1910, the wills of 1910 and 1903 and the petition of the appellee, says that

the responsibility that Mr. Burke had was a peculiar and delicate responsibility, in that he represented people many of whom were not in being, and that "it required a very high order of professional service, and a very high conception of professional duty and obligation in order to carry out the work as well as he did," that from his knowledge of the mortality table, the contingent interests represented by Mr. Burke represented, an "absolute interest" of $300,000.00, and that "considering the responsibility and the amount involved and the work he did and the way in which he did it," he thinks $15,000.00 is a reasonable compensation for the services rendered by the appellee. Mr. Frank Gosnell, who stated that he was familiar with the character and extent of the services rendered, said that, without considering the value of the interest of the contingent remainderman, the fact "that he was employed to defend the will, and to carry out the intention of the testator" imposed a very great responsibility upon the appellee. "He had opposed to him Mr. Harley, who represented some of the children, and, as I understand, Mr. Gans represented others, and he did not expect to get any assistance from these gentlemen, so that everything devolved upon him. I think, the responsibility and the labor and the amount of the estate involved entitles him to a fee of $15,000.00." Mr. William Shepard Bryan, Ex-Attorney General of this State, who had read the petition of the appellee containing a statement of the services rendered, testified that $15,000.00 was "a reasonable and fair fee for the services rendered, considering that he was the sole representative of those interests." Mr. Edgar Allan Poe, present Attorney-General of the State, testified that in view of the responsibility imposed upon the appellee, the size of the estate and the extent of the services rendered a fee of $15,000.00 was reasonable. The testimony of Mr. William Grason and Mr. Robert Bussey is to the same effect, and it was admitted that Mr. Shirley Carter and Mr. S. S. Field, if present, would

have testified that the amount allowed by the Orphans' Court was a reasonable compensation for the appellee's services.

Such testimony by members of the bar of the standing, prominence, ability and experience of these gentlemen is justly entitled to and must be accorded great weight in the determination of the question involved. On the other hand, other gentlemen of the bar, of high standing and unquestioned ability and character, whose opinions are worthy of the most careful consideration by this Court, after hearing the testimony of Mr. Burke, have placed a very much lower estimate upon the services rendered by him. Mr. Joseph Packard testified: "I would leave out of view entirely the question of commissions, because an administrator, a special administrator, handles no funds, and the question of commissions does not enter into it as it does in the case of one who recovers or conserves an estate, but simply represents a contingent interest of the grandchildren or the great-grandchildren, and that contingent interest would simply be to protect whatever they might have against the loss of the estate by their parents or against the parents willing it away from them. That would be the only two contingencies as I heard the testimony the other day in which the question of the amount of the estate could arise. I consider that the amount of the estate, therefore, cuts very little figure in this case. It is simply a question between whether the mimimum fee should be charged or a full fee, and I would say that the full fee should be charged in a case like this, whether the estate was $500,000 or five million dollars, it would not make any practical difference. It would not be proper to charge in an estate worth $10,000 or $25,000 as much as that, as all professional men recognize the difference between a minimum fee and a full fee. I would consider the services in this case very much analogous to the services to be performed by any arbitrator or by a special master. The arbitrator has the responsibility of deciding the whole case, and so does a special master, and having all those things in view and hav-

ing regard to all the circumstances testified to by Mr. Burke, of course I assume the entire truth of his testimony, and his absolute honesty in claiming the fee that he does, but I am called upon to express my opinion as a professional man on that subject, and my opinion is that $2,500 would have been the full fee for the services that have been described." Mr. Charles W. Field stated that in view of the fact that the appellee did not succeed in sustaining the will, he thinks that $3,500 would be a proper fee for his services. In the opinion of Mr. Eugene O'Dunne the work the appellee had to do was very much simplified by the fact that the caveat to the will of 1910 had been "Fully and ably tried by able and learned counsel on both sides," he had the benefit of the rulings of the Court on the evidence and the prayers, and his work was like the preparation for a retrial of a case that "had been thoroughly thrashed out, assuming that it was to be tried on the same grounds." According to his view if the appellee had assumed the responsibility of disposing of the matter without a trial he would have been entitled to extra compensation, but as he very properly avoided that responsibility by a trial of the case, a fee of $3,000 would be a liberal compensation for his services, and he says that he does not look upon the value of the estate "as an at all controlling factor." Mr. J. Walter Lord states that taking into consideration the time and labor involved, the difficulties of the case, the experience of counsel, the certainty of compensation and the character and extent of responsibility $3,500 would be a fair and reasonable fee for the services rendered by the appellee. He says further that the appellee's employment was that of a special officer of the Court, like that of a master or referee, and that his responsibility "in that regard" should not be measured by the amount of the estate; that his responsibility as representing the contingent interest of the grandchildren depended upon the value of that interest; that the substantial interests in the case were not interested in defending the will, and that the appellee "was only to decide whether the will

ought to be defended in the interest of these grandchildren."
Mr. Charles Morris Howard expressed the opinion that $2,-
500.00 was a liberal fee for the services rendered, and said
that while an attorney is authorized, where a larger amount
is involved, to charge a larger fee than he would be justified
in charging where the amount involved is small, he did not
think that because the estate is a large one you should lose
sight of the fact that the measure of compensation "is the
work, responsibility, time and diligence that goes into the
matter. In other words if the services he has performed is
worth $2,500, it becomes immaterial, in a sense, whether
the estate consists of one, three or four millions of dollars,
because it is a question of how much should be fairly charged,
how much he has a right to charge for the services per-
formed." As reflecting only upon the *amount* of labor per-
formed he says that the appellee was not prepared to defend
the will from attack on the ground of undue influence; that
when the evidence of undue influence was offered he only
cross examined the witnesses and did not make a "strenuous
fight along those lines," and that in considering what the
appellee should receive for his services what he did, should
be taken into consideration; that if the appellee had been
engaged two or three weeks in defending the will, or had made
the fight and the will had been sustained, his opinion as to
the amount of the fee "would have been different." Mr.
Edward N. Rich testified that in his opinion $3,000 would
be full compensation for the services rendered by the appel-
lee, and stated Mr. Burke had the advantage of the testimony
that had been produced in the contest over the will of 1910;
that the responsibility imposed upon him was avoided by the
trial of the case before a jury; that he was not charged with
the care and custody of the estate, and that the duty imposed
upon him was only "a little more than would be imposed by
a retainer," which required him to go over the record "in
the previous case" and to decide whether he would be justi-
fied in incurring the expense of another trial. The record

also contains an agreement that Mr. George R. Willis and Mr. R. E. Lee Marshall were familiar with the character of the services rendered, and, if present, would have testified that a fee of from $2,500 to $3,000 would be a fair and reasonable compensation for the same.

The evidence in this case illustrates the great diversity of opinion among members of the profession as to the value of professional services in a particular case, and it is perhaps not unnatural, for there can be no fixed and certain standard by which to measure it, and while, as we have said, there are certain well recognized elements that are essential to a proper and fair conclusion, each case has its distinguishing features, and the estimate of one called on to express an opinion depends largely upon the analysis of the services and the particular point of view from which it is made.

Apart from establishing the principles upon which such questions are to be decided, reference to adjudicated cases afford but little assistance in reaching a proper conclusion, as each case must be determined according to its special facts and circumstances.

When this case was before us at the October Term we held that the appellee was entitled to a fair and reasonable compensation for the services rendered by him as special administrator as well as those rendered by him as attorney. While these services were mainly those of an attorney, we think his letters imposed an added responsibility. He was in the attitude of counsel compelled to decide and act without his client, and the evidence shows that he fully and conscientiously discharged the duties required of him. He had opposed to him counsel of recognized ability and experience, who might be expected to press their claims with zeal and vigor, and whose judgment and skill would be quick to detect any weakness in his defense. He was no doubt greatly aided by the record of the trial of the previous case, but in the careful preparation he made for the trial he was required to look up and consult other witnesses, and to examine the

authorities upon the various questions that he might reasonably expect to arise. The amount involved was large and the case was an important one. While the fact that a client is rich can, as suggested by some of the witnesses, and as must be conceded, afford no justification for a charge by counsel in excess of what is a reasonable compensation for his services, the *amount involved* in a controversy bears a very different relation to the question, and constitutes in many instances, in a large degree, the measure of the importance of the case and the responsibility of counsel.

In view of the character and the amount of work he was required to perform, and in consideration of the importance of the case and the amount involved, we have, after most careful deliberation, reached the conclusion that $8,000 is a fair and reasonable compensation for the services the appellee rendered as special administrator and as attorney, and that the sum allowed by the Orphans' Court should be reduced accordingly.

Inasmuch as the amount allowed by this Court is considerably more than the amount contended for by the appellants, and less than the amount allowed by the Orphans' Court, we will direct that each party pay one-half of the costs.

> *Order reversed and case remanded in order
> that an order may be passed by the
> Court below in conformity with this
> opinion, each party to pay one-half of
> of the costs.*