EUGENE O'DUNNE

*vs.*

SAFE DEPOSIT AND TRUST CO. OF BALTIMORE,
TRUSTEE, UNDER THE WILL OF JOSHUA P.
McCAY, DECEASED.

*Counsel fees: authority of court; review on appeal.*

The fixing of counsel fees, where courts are authorized to fix them, is generally to be treated as *prima facie* correct.
                                                    pp. 95-96

Yet where the fee is fixed by the court on its own motion, and the sum fixed by it, on recommendation of witnesses at the hearing of exceptions, varies greatly, the Court of Appeals will review the court's finding and fix the amount of the fee to be allowed.                                            p. 96

*Decided June 19th, 1918.*

Appeal from Circuit Court No. 2 of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Randolph Barton, Jr.,* for the appellant.

*Charles McHenry Howard,* for the appellee.

Briefs were filed by *Eugene O'Dunne,* Solicitor for Infant Appellants; by *Hamman, Cook, Chesnut & Markell,* Solicitors for Rowland Morgan, and *L. A. Dent,* Solicitor for Emily G. McCay Proctor and Helen McCay Phillips.

CONSTABLE, J., delivered the opinion of the Court.

The sole question presented in this appeal is to the adequacy of a fee allowed by the lower Court to counsel appearing for certain infant defendants under an appointment by the Court. No question has been raised as to the right of the solicitor to be compensated for this is admitted.

For the disposition of this case it will not be necessary to go with any great detail into the facts of the case, out of which the right of the appellant to a fee arose, and we will therefore content ourselves with setting out the memorandum of facts which was forwarded by the appellant to several members of the Bar for the purpose of aiding them in forming an opinion as to what would be a proper fee to be allowed the appellant by the Court for his work in preparing and trying the case and so as to enable them to testify at the hearing on that question.

"Joshua McCay left in trust to the Safe Deposit and Trust Company under the will construed in this case an estate of a little over $1,000,000.

"There was a provision, after the death of his widow (now dead) to divide into quarters and hold each quarter in trust for children and descendants.

The one-quarter interest of the Mary Morgan share is $241,378.12.

Her three children are Howard (died April, 1917), Mary Nicholls (living, no children), Rowland Morgan (living, three living children).

Howard Morgan, deceased, left two infant children.

The annual income on the Howard Morgan share, being one-third, was $3,714.12, with like amount to his brother Rowland and sister Mary Nicholls.

A bill was filed by the Safe Deposit and Trust Company, April 4th, 1917, to construe the will, and par-

ticularly the 9th clause thereof, to determine in whom
the income is vested, whether in the infant children of
Howard Morgan, deceased, or whether in his adminis-
trator, and also the rights of the surviving brother and
sister as to income, and eventually as to corpus on the
death of the survivor of said Morgan children.

It was contended by Mr. Vernon Cook, represent-
ing Mrs. Nicholls and Rowland Morgan, that the
grandchildren of testator take vested interests, and con-
tended by Mr. O'Dunne, counsel for the infant children
of Howard Morgan, deceased, and the infant children
of Rowland Morgan (now living), that the right to
income is vested in these great-grandchildren, and not
in their parents, and that on the death of the survivor
of said Mary Morgan children, her then living descend-
ants at the time of the termination of the trust shall be
the ones to whom the corpus shall be distributed.

The case was set for argument before Judge Duffy
September 25th, and counsel were excused two or three
times a day, for two or three days, waiting on a pend-
ing case.  It was later finally and fully argued by
Mr. Charles McH. Howard for the Safe Deposit Com-
pany, Mr. Jesse Bowen for Rosa McCay Lockwood,
by Mr. L. A. Dent, of Washington (with whom was
Mr. Frank Gosnell), for Emily Proctor, and by Mr.
Vernon Cook for Rowland Morgan and his sister, Mary
Nicholls, and by Eugene O'Dunne for the infant chil-
dren of Howard Morgan, deceased, and for the infant
children of Rowland Morgan (living).

Elaborate briefs were prepared and filed by Mr.
Dent on behalf of himself and Mr. Gosnell (35 type-
written pages), by Mr. Vernon Cook (10 pages), and
the inclosed by Mr. O'Dunne on behalf of the infant
children aforesaid. (Said last brief was of 62 printed
pages).

On November 9th Judge Duffy handed down the
inclosed opinion and decree sustaining the contention
of the infant children of Howard Morgan, deceased,
and of Rowland Morgan (living)."

At the time of the signing of the decree on the points involved in the case some discussion arose among the counsel and Court as to the amount of the fees to be allowed to respective counsel for their services in the case. From certificate of the Court in the record it appears that:

> "the court asked Mr. O'Dunne what counsel fee he proposed taking, and Mr. O'Dunne stated that he had no particular amount to name; that in this particular case all of the services rendered were peculiarly within the knowledge of the court; that his brief had been filed and left with the court; and that he was willing to leave the matter to be determined by the court, and reminded the court that he had left with the court certificates, or letters, from Mr. Fisher, Mr. Barton, and Mr. Machen for the court's consideration, and asked if any of the gentlemen present had any suggestions to make to the court on the subject. None were made, and the court, after reading the letters of Messrs. Barton, Fisher and Machen, stated that he would allow the fee of twenty-five hundred dollars ($2,500), to be paid out of the corpus of the Howard Morgan share. Mr. O'Dunne thereupon suggested that the court add to the form of decree, as drawn by Mr. Howard, that the same be made subject to exceptions. The court thereupon indicated that he would make it subject to exceptions to be filed in thirty (30) days, and the decree was thereupon revised accordingly by Mr. McH. Howard, and thereafter signed by the court."

Exceptions to the allowance of $2,500 counsel fee were filed by the Safe Deposit and Trust Company, trustee, under the will. A hearing was had on the exceptions and testimony heard in open Court.

The exceptant produced four witnesses in support of its contention that the fee was too large. All these witnesses had been closely identified with the trial of the case and were all men of exceptional knowledge of cases along the line of this case. There was Mr. John W. Marshall, Vice-President

O'DUNNE vs. SAFE D. & T. CO. OF BALTO.    95

Md.]                    Opinion of the Court.

of the Safe Deposit and Trust Company of Baltimore, and who at that time was head of the Trust Department of his company; Mr. Frank Gosnell, a member of the law firm of Marbury, Gosnell and Williams, and who had represented one of the parties in the litigation; Mr. Vernon Cook, a member of the law firm of Haman, Cook, Chesnut & Markell, and who represented one of the parties throughout the case; Mr. Jesse N. Bowen, a member of the law firm of Semmes, Bowen & Semmes. These gentlemen were thoroughly familiar with every feature of the case and testified as to what in their opinion would be proper compensation for the work accomplished by Mr. O'Dunne. Mr. Marshall placed his estimate at $500, Mr. Cook at $750, Mr. Bowen at $1,000. Mr. Gosnell testified that previous to the hearing he had considered $500 adequate compensation, but during the hearing he changed this estimate to $1,000.

The respondent, previous to the hearing, had requested Mr. D. K. Este Fisher, a member of the law firm of Fisher, Bruce & Fisher; Mr. Arthur Machen, Jr., a member of the law firm of Machen & Williams, and Mr. Randolph Barton, Jr., a member of the law firm of Barton, Wilmer & Stewart; all accomplished lawyers with a wide experience in cases of this character, to give him certificates, in the form of letters, as to what would in their opinion be a proper compensation to be allowed him in the case just tried. He furnished them with a memorandum of facts, which we have set out above, and talked to them generally about the case. Mr. Barton and Mr. Machen were unable to attend the hearing, but their certificates were filed. Mr. Fisher attended the hearing and testified. Mr. Fisher and Mr. Machen each placed their estimate at $2,500 and Mr. Barton $3,000.

The Court passed an order sustaining the exceptions, wherein it reduced the fee from $2,500 to $750.

The fixing of counsel fees where courts are authorized to do it, has always been regarded by them as one of their most delicate duties and especialy unpleasant is it to appellate

courts to have to review allowances made by the lower courts. Mr. Miller in his work on *Equity Procedure* in the notes to section 568 in dealing with this subject has well said that the action of the lower Court is treated as presumptively correct, since it has better means of knowing what is just and reasonable than an appellate Court can have and cites several authorities to that effect. While, of course, we want to give due weight and consideration to the finding of the lower Court and especially so since it heard every detail of the case and decided every question raised, which puts it in a peculiarly strong position so as to form a correct opinion as to the value of the services rendered, yet it is difficult to reconcile its views with that of the experienced lawyers testifying for the respondent. It may be that those lawyers, with all their experience and knowledge, did not occupy the same character of position which would enable them, because of their non-association with the case, to form as correct an opinion as to the value of the services mentioned as the Court who heard and decided the case and the lawyers who took part in its trial. It is also difficult to reconcile the Court's present opinion of $750 formed after the hearing on exceptions with the amount it placed of its own accord in the *nisi* order of $2,500. But there is a diversion of views among the lawyers testifying for the exceptant—two out of the four say $1,000 would be proper compensation, while the other two are for $500 and $750 respectively.

While we are of the opinion that the estimates placed by the respondent's witnesses are entirely too large, yet we are of the opinion that one thousand dollars ($1,000) should be allowed the appellant. We will, therefore, reverse the order.

> *Order reversed and cause remanded, so as to pass an order in conformity with the aforegoing opinion, the costs to be paid out of the Mary Morgan fund.*