## SPENCER *v.* McMULLEN, Trustee

[No. 163, October Term, 1950.]

*Decided May 24, 1951.*

Before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

Submitted on brief by *Samuel C. P. Baldwin* and *Baldwin, Jarman & Norris* for the appellant.

Submitted on brief by *Roger A. Clapp* and *Hersey, Donaldson, Williams & Stanley* for the appellee, J. William McMullen, Trustee.

Submitted on brief by *Biscoe L. Gray* and *Knapp, Tucker & Gray* for the appellee, James J. Ryan, Guardian *ad litem*.

GRASON, J., delivered the opinion of the Court.

This is an appeal from two orders of the chancellor overruling exceptions filed to the allowance by the chancellor of fees of $750.00 respectively to Roger B. Williams and Briscoe L. Gray. Mr. Williams was counsel to J. William McMullen, surviving trustee under the will of John H. Spencer, deceased. Mr. Gray was appointed counsel to the guardian *ad litem* who represented unborn children of John H. Spencer, Jr. There was no appeal taken from the decree construing the will, and the correctness of that decree is not before the court on this appeal.

To determine the reasonableness of the fees allowed by the chancellor it is necessary for us, in a general way, to set out the facts and circumstances which led up to the filing of the bill by Mr. McMullen praying for a construction of Mr. Spencer's will, and to determine whether his investment, as trustee, in certain securities was lawful.

John H. Spencer died on July 1, 1921. He left a will which was duly probated. Under his will he left seven-twentieths of the residue of his estate to Alice C. Spencer, his wife, absolutely; six-twentieths of the residue (as per item "Fourth" of the will) to J. William McMullen and Daniel B. Miller, trustees for John H. Spencer, Jr; and seven-twentieths of the residue to J. William McMullen and Daniel B. Miller, trustees for Gertrude Spencer Moyer.

The testator was employed, during his business life, by Daniel Miller Company, a corporation, and his estate was largely represented by stock issued by that corporation. The stock in that corporation was issued in the form of 6% cumulative first preferred stock of the par value of $100.00 per share, and 6% cumulative second preferred stock of the par value of $100.00 per share; 12,000 shares of common stock of the par value of $10.00 per share, and 12,000 shares of common stock of the par value of $1.00 per share. The preferred stock did not have voting power. Mr. McMullen was connected with the corporation for fifty-eight years, and was, for a long time, a director; and since 1933 had been its president. On September 14, 1948, he, Ernest M. Duvall and Charles T. Easter were voting trustees under a certain voting trust agreement, and as such entered into an agreement for the sale of the stock of the corporation to Jay Levine and J. M. Doroshaw on certain terms and conditions. These terms and conditions were fully met and all of the stock, common and preferred, was sold, with the exception of the stock of one person who declined to sell some of his common stock. Under this agreement the first preferred stock was sold at $100.00 per share, and the second preferred stock was sold at $178.00 per share. The common stock of par value of $10.00 was sold for $50.00 per share; and the common stock of par value of $1.00 was sold at par.

At the time of the sale there was an accumulation of earnings of the corporation. This accumulation was allocated to the 6% cumulative second preferred stock. That is the reason that stock was sold at $178.00 per share.

Mr. McMullen then consulted Mr. Williams, and after thorough consideration, Mr. Williams advised Mr. McMullen that it was doubtful, and a serious question as to whether the $78.00 allocated to the second preferred stock was income or capital. If capital, it could not be paid to Mr. John H. Spencer, Jr., life beneficiary under item "Fourth" of the testator's will, but would be part

of the corpus of the trust. The "Fourth" clause of the testator's will is as follows:

"Fourth—I give, devise and bequeath six-twentieths (6/20) of all my estate of every kind and description, and wherever situate, to J. William McMullen and Daniel B. Miller, in trust, to collect the issues and profits thereon, and to apply the proceeds first to the discharge of taxes thereon, and afterwards to pay to my son John H. Spencer, Jr., the net income during his life; provided that when my said son John H. Spencer, Jr. arrives at the age of thirty years, the said Trustees shall deliver to him, free and clear of said trust, Preferred Stock of the Daniel Miller Company of Baltimore City in the amount of Ten Thousand Dollars ($10,000.00) par value; and upon the further trust upon the death of my said son John H. Spencer, Jr. to divide the principal then remaining among his children, share and share alike, but if he shall die leaving no children, then to pay said principal to my daughter Gertrude L. Spencer, or in the event of her predeceasing my son, then to pay said principal to my wife Alice G. Spencer. Said Trustees while acting as aforesaid, to have full power in their absolute discretion to transfer any part of said trust estate, invest and re-invest the same in such interest bearing securities as are contained in the list of securities maintained and approved by the Circuit Court of Baltimore City for the investment of trust funds, as the said list may from time to time be revised by said Court, provided, however, that such power shall only be exercised upon the consent of both Trustees."

He also told the trustee that his investment in stocks was very doubtful, and he advised him to file a bill for a construction of the will of the testator, particularly item "Fourth" of the will. This was done.

It started out as a very friendly proceeding. Mr. W. L. Baldwin represented the life tenant, John H.

Spencer, Jr. It might be said here that Mrs. Alice G. Spencer, the widow of the testator, died February 2, 1949, and she left a will under which she devised everything she possessed to her daughter, Gertrude Spencer Moyer. This will was duly probated. Mrs. Moyer assigned her contingent interest in the $78.00 per share accumulation to John H. Spencer, Jr. It seems that Mr. Williams and Mr. Baldwin consulted about the matter before the bill for construction of the will was filed. Mr. Baldwin wanted a great deal of information, some of it about the stockholders and various matters concerning stockholders, which had been turned over to the purchasers of the Daniel Miller Company stock when the sale was consummated. Mr. Williams finally filed a bill, testimony was taken before an examiner, the matter was referred to the master in chancery, arguments were made and briefs filed before the master, and the chancellor filed his decree, holding that the accumulation of profits of the Daniel Miller Company at the time the sale of the stock of that company was made was income and properly allocated to the 6% cumulative second preferred stock. While the decree of the chancellor in that matter is not contained in the record, the matter of the purchase of stock by Mr. McMullen, surviving trustee under item "Fourth" of the will, was also before the court, and the action of Mr. McMullen in purchasing that stock was apparently ratified and confirmed.

It is contended by the appellant that the proceeding to which we have referred was brought for the benefit of Mr. McMullen as an officer of the Daniel Miller Company and was unnecessary; that it entailed unnecessary expense; that the matter could have been brought before the court upon an agreed statement of facts, and that the real purpose of the bill was for the protection of Mr. McMullen in the sale of the stock of the Daniel Miller Company.

Mr. Williams represented Mr. McMullen in the matter of the sale of the Daniel Miller Company stock. It is faintly intimated that because of the fact that Mr. Wil-

liams represented Mr. McMullen in that capacity and as trustee under item "Fourth" of the testator's will, something sinister was afloat. It was necessary for the trustee to be told by the chancellor what to do with this accumulation, that is, whether the accumulation was income or *corpus,* for after the life tenant's death if it was *corpus* it would go to his children, and as he might have children before his death it was necessary, as was done, that a guardian *ad litem* be appointed to represent the interest of any unborn children of Mr. Spencer, Jr. The construction of the will was necessary to Mr. McMullen and to his successor, and to those interested under the will. *Hans v. Safe Deposit & Trust Co.,* 178 Md. 52, 59, 12 A. 2d 208, *N. C. Railway Co. v. Keighler,* 29 Md. 572, 579.

Mr. Williams was Mr. McMullen's counsel and it was perfectly natural for him to employ him in this trust matter, and we see nothing at all irregular in Mr. Williams representing Mr. McMullen in the trust matter. There is no merit in the contention made by the appellant that the right procedure in this case was not followed. Mr. Baldwin and Mr. Williams apparently could not agree on a statement of facts, although some time was spent in an effort to agree on a statement of facts. The procedure adopted in this case is the usual procedure, and of course the costs attending such procedure were necessary.

The investment in stocks by Mr. McMullen, trustee, was questioned, and this presented a serious legal matter, and the chancellor evidently ratified and confirmed the investment. It would seem to be queer for Mr. Spencer, Jr. to question the legality of the stock investment, because he was consulted by Mr. McMullen before the investment was made and he agreed that it would be a good thing to purchase the stock, and in his testimony he refers to the stock investment by the trustee as "excellent". He criticizes the sale made by Mr. McMullen of the Daniel Miller Company stock, although he wrote Mr. McMullen approving the sale of the Daniel

Miller Company stock that Mr. McMullen held as trustee under item "Fourth" of the testator's will.

The legal matters presented in this case were difficult questions, as can be seen by the very thorough briefs filed by Mr. Williams and Mr. Gray, which are in the record. The master was in doubt about the matter, and there were two hearings before him in which the legal question involved was fully discussed. The decision in this case not only involved the cumulative second preferred stock in which Mr. Spencer, Jr. had a life estate, but such stock held by other persons.

This is not a case where the chancellor of his own volition fixed the respective fees of counsel. The fees were certified to by well known members of the bar, and upon exception these gentlemen testified to what they considered was a reasonable fee for Mr. Williams and for Mr. Gray. In a case where the chancellor, of his own volition, fixes a fee, such a fee is *prima facie* correct. Yet, when the fee so fixed varies greatly from evidence given at the hearing on exception thereto, this court will review the chancellor's finding and fix an amount of fee to be allowed. *O'Dunne v. Safe Deposit & Trust Company,* 133 Md. 91, 104 A. 262.

In *Heating Co. v. Whitelock,* 120 Md. 408, 414, 87 A. 820, 822, Judge Thomas quoted Judge Pearce in the case of *Title Company v. Burdette,* 104 Md. 666, 671, 65 A. 341, as follows:

" 'The objection that the allowance is excessive will be first considered. No evidence was taken upon this subject, though there was ample opportunity to do so, if it had been desired. It rests upon the certificate of the experienced counsel of high standing, and upon the presumed discretion of the distinguished judge who allowed it. Upon these circumstances, whatever opinion we might entertain of the matter, we would not feel justified in disturbing the amount, unless the disproportion of the allowance to the services rendered, was so great as to indicate that the judge below failed to

exercise a sound and reasonable discretion, and we cannot say that.' "

"The principal elements to be considered in determining the reasonableness of counsel fees are, the amount involved, the character and extent of the services, the time employed, the importance of the question, and the fidelity and diligence of counsel. It is apparent that no one of these elements is controlling, but consideration must be given to all in arriving at a fair and just conclusion." *Knapp v. Knapp,* 151 Md. 126, 131, 132, 134 A. 24, 26; *Taylor v. Denny,* 118 Md. 124, 84 A. 369; *O'Dunne v. Safe Deposit & Trust Co., supra.* "It is the function of the court to fix the amount of fee to be awarded. In reaching its conclusion, the magnitude of the interests involved, the legal difficulties met, the length of time engaged, the skill and diligence displayed, and the practical result obtained by services rendered to the receiver and in the interest of the estate, are elements which, in connection with the other relevant facts and circumstances, must be well weighed by the court in order that a reasonable fee be allowed. The fundamental consideration, however, is that the compensation should be confined to work which was reasonably necessary for the proper administration of the trust. The decision of the court is presumptively correct, because of its opportunity to know or ascertain and estimate aright the value of the services, but its finding is subject to review on appeal, and will be reversed for clear and substantial error." (authorities cited) *County Corporation v. Semmes,* 169 Md. 501, 527, 182 A. 273, 274.

Mr. Williams conducted an equity proceeding. He testified: "The value of the estate, I have a calculation in my hand, which Mr. McMullen approved on November the 27th., 1950, showing the securities now held and the cash now in the estate, and the closing prices on Saturday, November 25th., 1950, showing a total of

$41,118.25. I would like to offer that in evidence and give Mr. Baldwin a copy." This statement was offered in evidence as Plaintiff's Exhibit 1, and is not contradicted. He further testified that his diary shows that this matter went along for approximately two years and acquired his attention for at least forty-four different days, that is, that he did something in connection with the matter on forty-four different days. We think that the proceeding was a perfectly proper and usual proceeding and, under the circumstances, conducted as speedily as conditions permitted. Undoubtedly the question involved was a serious legal question, and in advising the trustee in this matter Mr. Williams carried considerable responsibility. We think that the fee was fair and reasonable. The action of the chancellor in the allowance of the fee was *prima facie* correct, and distinguished lawyers have testified that the fee is reasonable. The only evidence offered by the appellant that the fees were excessive was given by Mr. Baldwin, Sr., counsel for appellant.

Mr. Gray was appointed by the court to represent the guardian *ad litem* of the unborn children of John H. Spencer, Jr. He filed, on behalf of the guardian *ad litem*, an answer to the bill, and conducted the proceedings on his behalf. He filed a brief which shows considerable care and research, and through his efforts the legal right of such unborn heirs was brought to the attention of the master and chancellor. He attended the hearing before the master, and also before the chancellor. We think his responsibility in this matter was equal to that borne by Mr. Williams, and that the fee of $750.00 allowed him for this service, by the chancellor, was fair and reasonable. The decree of the chancellor will be affirmed.

*Decree affirmed, with costs to appellee.*