CITY OF BALTIMORE *v.* BAINDER, Receiver

[No. 127, October Term, 1952.]

*Decided April 23, 1953.*

. The cause ·was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS and HENDERSON; JJ.

*John R. Cicero,* Assistant City Solicitor of Baltimore, with whom were *Thomas N. Biddison, City Solicitor,* and *Edwin Harlan,* Deputy City Solicitor, on the brief, for appellant.

*William Saxon,* for R. Lewis Bainder.

*Isidore Ginsberg,* with whom were *Ginsberg and Ginsberg* and *Harry Leeward Katz,* on the brief, for Plakatoris.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal was brought here by the Mayor and City Council of Baltimore from an order of the Circuit Court No. 2 of Baltimore City overruling its exceptions to the auditor's amended account in a receivership proceeding brought by New Coffee Cup Restaurant, Inc., under the Sales in Bulk Act. Code 1951, art. 83, secs. 97-101.

On November 15, 1949, Steve Stavracos, operator of New Coffee Cup Restaurant at 3503 South Hanover Street and a cocktail lounge at 3505 South Hanover Street, contracted to sell the equipment and stock in the cocktail lounge to Jake Plakatoris and John Stavracos for $16,000. Plakatoris made a partial payment of $1,600. On the following day he made a second payment of $2,500 upon an assurance of Steve Stavracos that there were no creditors of the lounge. On December 7 Stavracos presented a statement under affidavit that there were no creditors of the lounge, whereupon Plakatoris made a third payment of $3,900, thus paying a total of $8,000. It was understood that the remaining $8,000 was to be paid by the cancellation of a loan for $8,000, which John Stavracos had made to Steve Stavracos.

It was afterwards learned that Steve Stavracos was heavily in debt. While the indebtedness was mainly on account of the restaurant, it was questioned whether the business of the lounge could be segregated from the business of the restaurant. Accordingly on February 10, 1950, Plakatoris filed a bill in the Circuit Court of Baltimore City for the appointment of a receiver to

take charge of both the restaurant and the lounge. Some weeks later the creditors of the lounge reported that their claims had been satisfactorily adjusted, and the Court ordered Stavracos to transfer the equipment and stock in the lounge to the purchaser.

On February 17, while that proceeding was pending in the Circuit Court, Stavracos contracted to sell the restaurant business to Peter Kritikas for $22,000. Kritikas paid $500 in cash and agreed to pay the balance of $21,500 after the notice to creditors required by the Sales in Bulk Act. On February 21 Kritikas assigned the contract to the New Coffee Cup Restaurant, Inc. That corporation received from Stavracos a list of his creditors and notified them of the sale. On March 14 Stavracos gave a bill of sale to the corporation.

On March 16, 1950, the corporation filed in the Circuit Court No. 2 its bill for the appointment of a receiver to take charge of the balance of the purchase price of the restaurant and to distribute it under orders of the Court. On that day the Court appointed R. Lewis Bainder receiver for that purpose. On March 30 the Court ratified the sale and authorized the receiver to proceed with his duties.

On April 11 the receiver made a demand on Plakatoris and John Stavracos to contribute toward paying off Steve Stavracos'. chattel mortgages. Plakatoris refused. He asserted that it was understood at the hearing in his proceeding in the Circuit Court that the cocktail lounge was to pass to him and John Stavracos free of all debts. The receiver contested that position. He paid off the mortgages and became substituted trustee. On April 30, 1951, he sold the chattels in the lounge under foreclosure proceedings for $4,000. The balance remaining from the proceeds of sale was transferred to the receiver.

On April 19 the Court ordered the receiver to pay to James Kourkoules, lessor of the restaurant building, the sum of $1,506.24 in settlement of his claim for rent, fuel oil and water rent.

On August 23, 1950, the City of Baltimore filed its claim of $3,334.38 for taxes on tangible personal property in the restaurant for the years 1946, 1947, 1948, 1949 and 1950.

On May 21, 1951, Plakatoris requested the Court to determine the preference to which he might be entitled for money he paid for the property in the cocktail lounge and for which he received nothing. The receiver admitted that Plakatoris had paid Stavracos $8,000 in cash and that Plakatoris was led to believe at the time he contracted to buy the property in the lounge that Stavracos was solvent, whereas he afterwards learned that he was insolvent. On June 4 the Court directed the receiver to pay to Plakatoris the sum of $5,500 as a preference, subject to the usual exceptions. This preference was for the deposit of $1,600, one-tenth of the purchase price, and the sum of $3,900, which he paid after receiving the affidavit that there were no creditors. Under this ruling, Plakatoris lost $2,500, the sum he paid after the contract was executed but before he received the affidavit.

The auditor, however, in his account filed on June 28, did not make any allowance for Plakatoris. On July 5 Plakatoris excepted to the account. On April 25, 1952, the Court sustained his exceptions and passed an absolute order directing the receiver to pay Plakatoris $5,500 as a preferred claim ahead of all other claims, including claims for Municipal, State and Federal taxes.

On August 12, 1952, the auditor filed his amended account, which allowed Plakatoris $5,500 and Kourkoules $1,506.24.

On August 27, 1952, City Treasurer John J. Ghingher, acting on behalf of the Mayor and City Council, filed exceptions to the amended account. He stated as the grounds of objection that after Plakatoris excepted to the auditor's original account, the City Treasurer's Department was notified that a hearing would be held on those exceptions on March 20, 1952; but that the Department was later notified that the hearing had been

postponed; that no further notice was received until the auditor's notice of August 12 that the account was restated and no funds were available for distribution to the Department; and that if the Department had been notified of the hearing on the exceptions, it could have shown that the City's claim for $3,334.38 should have been preferred over Plakatoris' claim.

The Maryland Retail Sales Tax Division also filed exceptions to the auditor's account. On October 6, 1952, the Court overruled the exceptions of the City and the State. The City appealed from that order, contending that its claim for taxes should be given priority over the claims of Plakatoris and Kourkoules.

The Court below allowed Plakatoris a preference for $5,500 on the ground that he had made payments totaling that amount for the purchase of the cocktail lounge; that he received nothing in return for those payments; that he should not be permitted to lose the amount which had been obtained from him by fraud; and that such amount should not be considered as a part of the receivership fund.

The Court allowed the claim of Kourkoules, the landlord of the restaurant building, not as a distribution to a creditor, but as an administration expense. The receiver explained that he could not justly distribute the money received from the purchaser of the restaurant business unless the purchaser was given the right to occupy the restaurant building, for Stavracos agreed to sell the restaurant business subject to the lease, which extends to April 30, 1956. The auditor accordingly listed the landlord's claim in the preferred group along with counsel fee, receiver's commissions, premium on receiver's bond, and court costs.

The auditor, in his original account, filed June 28, 1951, allowed Kourkoules $1,506.24 for rent, fuel oil and water rent. The City made no objection to the account. The amount allowed Kourkoules in the amended account was the same as in the original account. On April 25, 1952, the Court passed an order directing the

receiver to pay Plakatoris $5,500 as a perferred claim. The auditor's second account was filed on August 12, 1952. The City admitted that it had received notice of the account, but did not file exceptions to the account until August 27, 1952. The exceptions were not filed in proper time, as Rule 660 A the Rules of the Supreme Bench of Baltimore City (1927 Ed.) requires that exceptions to an auditor's account shall be filed within 10 days from the time the account is filed.

It is now too late for the City to object to the landlord's claim. Of course, in any judicial proceeding no person should be deprived of a right or charged with a default until he has been given an opportunity to be heard in respect thereto; but where a person has been given that opportunity and he remains silent and allows the decision to go against him without objection, he is bound by the decision as conclusively as though he had actively contested it. *Moss v. Annapolis Saving Institution,* 177 Md. 135, 143, 8 A. 2d 881.

The City relied on the following provision of the State Tax Law: "Whatever a sale of either real or personal property upon which taxes are due and payable shall be made by any ministerial officer, under judicial process or otherwise, all sums due and in arrears for taxes, upon such property, from the party whose property is sold shall be first paid and satisfied; and the officer or person selling shall pay the same to the collector of the county and/or city." Code 1951, art. 81, sec. 201.

It is entirely true, as stated in *Thompson v. Henderson,* 155 Md. 665, 671, 142 A. 525, 58 A. L. R. 1213, that where, after a sale of property by a ministerial officer, there is any residue remaining for distribution to the taxpayer or among the unsecured creditors, the amount of all taxes due and in arrears must be paid out of the residue. In the instant case there was no sale of any property by any ministerial officer. The case was filed by the restaurant corporation under the Sales in Bulk Act after the owner had made a private sale of the property. The Court then appointed a receiver and

authorized him to take charge of the proceeds of sale and to distribute them under orders of the Court. Under those orders there was no residue of proceeds of sale remaining for distribution to unsecured creditors.

For the reasons we have stated, we must affirm the order overruling the City's exceptions to the auditor's amended account.

*Order affirmed, with costs.*