PLAKATORIS *v.* BAINDER, Receiver
[No. 103, October Term, 1953.]

*Decided March 22, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Hyman Ginsberg,* with whom were *Ginsberg & Ginsberg* and *Harry Leeward Katz* on the brief, for appellant.

Submitted on brief by *William Saxon,* for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is the second appeal that has come here from the receivership proceedings brought by New Coffee Cup Restaurant, Inc., in the Circuit Court No. 2 of Baltimore City under the Sales in Bulk Act. Code 1951, art. 83, secs. 97-101.

The first appeal was taken by the City of Baltimore, claimant to taxes due on personal property in the New Coffee Cup Restaurant at 3503 South Hanover Street. It appeared on that appeal that Steve Stavracos, operator of the restaurant and also the cocktail lounge at 3505 South Hanover Street, had contracted in 1949 to sell the equipment and stock in the lounge to Jake Plakatoris and John Stavracos for $16,000. Plakatoris made three payments totaling $8,000, and it was understood that the other $8,000 was to be paid by cancellation of a loan made by John to Steve Stavracos. Steve assured Plakatoris that there were no creditors of the lounge, but Plakatoris learned soon afterwards that Steve was heavily in debt. While the indebtedness was mainly on account of the restaurant, it was doubtful whether the business of the restaurant could be segregated from the business of the lounge.

On February 17, 1950, Steve Stavracos contracted to sell the restaurant business to Peter Kritikas for $22,000.

Kritikas paid $500 in cash and agreed to pay the balance after notice to creditors had been given in accordance with the Sales in Bulk Act. On February 21 Kritikas assigned the contract to New Coffee Cup Restaurant, Inc., which obtained a list of Stavracos' creditors and notified them of the sale.

In March, 1950, New Coffee Cup Restaurant, Inc., filed its bill for appointment of a receiver to distribute the purchase money under the direction of the Court. The Court appointed R. Lewis Bainder receiver. William Saxon was appointed attorney for the receiver.

In April, 1950, the receiver made a demand upon Plakatoris and John Stavracos to contribute toward paying off Steve Stavracos' chattel mortgages. Plakatoris refused, claiming that it was understood at a hearing in a previous proceeding in the Circuit Court, in which he had applied for a receiver to take charge of the restaurant and lounge, that the lounge was to pass to him and John Stavracos free of debt. The receiver contested that position, paid off the chattel mortgages, became substituted trustee, sold the chattels in the lounge under foreclosure proceedings, and received the balance remaining from the proceeds of sale.

In August, 1950, the City of Baltimore filed its claim for taxes for the years 1946, 1947, 1948, 1949 and 1950. In May, 1951, Plakatoris petitioned the Court to determine what preference he was entitled to for the money he paid for the property in the lounge and for which he received nothing. It was conceded that Stavracos, at the time he accepted the $8,000 from Plakatoris, led him to believe that he was solvent. Accordingly the Court on June 4 directed the receiver to pay Plakatoris $5,500 as a preferred claim, subject to exceptions.

The auditor, however, in his account filed on June 28, 1951, did not make any allowance for Plakatoris. Plakatoris excepted to the account, and on April 25, 1952, the Court sustained his exceptions and passed an absolute order directing the receiver to pay Plakatoris $5,500 ahead of all other claims, including Municipal, State

and Federal taxes. On August 12, 1952, the auditor filed an amended account, which allowed Plakatoris $5,500.

The City and the State filed exceptions to that account. The Court overruled the exceptions and the City appealed.

On April 23, 1953, the Court of Appeals decided that, since the City did not file exceptions to the amended account within the time required by the Rules of the Supreme Bench of Baltimore City, although it received notice of that account, it was too late for the City to object to Plakatoris' claim. Thus the order allowing Plakatoris a preference of $5,500 was affirmed. *City of Baltimore v. Bainder*, 202 Md. 307, 96 A. 2d 17.

On May 26, 1953, the receiver petitioned the Court below to authorize him to pay Mr. Saxon a counsel fee for additional services rendered by him. The receiver alleged that Mr. Saxon had performed services as his attorney from March 16, 1950, to May 7, 1951, and that on May 7, 1951, the Court authorized him to pay Mr. Saxon $2,000 as his counsel fee. The receiver then alleged that Mr. Saxon had performed the following additional services since that time: (1) appeared in Court on April 25, 1952, and argued in favor of the exceptions filed by Plakatoris to the auditor's account; (2) appeared in Court on October 6, 1952, and argued against the exceptions filed by the City, State, and Federal Government to the auditor's amended account; (3) examined the designation of record filed by the City for its appeal; (4) examined the City's brief and appendix; and (5) filed a brief and argued the case before the Court of Appeals.

Acting upon that petition, the Court ordered the receiver to pay Mr. Saxon $1,800 as compensation for his professional services. The auditor thereupon filed a second amended account, which allows Mr. Saxon $1,800 and Plakatoris only $3,874.56. Plakatoris excepted to that account, and the Court overruled his exceptions. From that order Plakatoris brought this appeal.

Appellant urged that Mr. Bainder, the receiver, did not obtain prior consent of the Court to participate in the City's appeal, and hence Mr. Saxon acted merely as a volunteer. It is conceded that Mr. Bainder was appointed receiver under the Sales in Bulk Act with the limited authority to have custody of the purchase money and to distribute it under orders of the Court as in other receiverships. Code 1951, art. 83, sec. 98. Generally, a receiver, who is an officer of the court and subject to its orders and directions, has no right of appeal from an order relating to the receivership. It is reasoned that to allow a receiver to review the rulings of the court under whose appointment he acts, without first obtaining authority for that purpose, would tend to consume the receiver's fund in the payment of counsel fees and costs, rather than to conserve the fund for the benefit of those for whom the fund is administered. Accordingly it has been held that a receiver cannot appeal from an order of court which distributes the fund in his hands, or which determines the relative rights of creditors and does not increase or diminish the assets as a whole. *Knabe v. Johnson,* 107 Md. 616, 619, 69 A. 420; *Beilman v. Poe,* 120 Md. 444, 447, 88 A. 131. By statute in this State, a receiver now has the right of appeal to the Court of Appeals from a decree determining a preference or priority between creditors or other persons interested in the estate, provided that such appeal is taken with the consent and approval of the equity court having jurisdiction over the estate. Code 1951, art. 5, sec. 43. In the instant case, however, the receiver did not take the appeal. He was one of the appellees, and he was entitled to be represented by his attorney.

It was argued by appellant that the appeal was a contest between creditors for priority, that the City of Baltimore was represented by the City Solicitor, and Plakatoris was represented by his own attorneys. We cannot, however, agree with appellant that Mr. Saxon should not be allowed any counsel fee whatever for his

services in 1952 and 1953. But it was not his duty to do any more in connection with the appeal than to appear for the receiver and submit the case to the Court of Appeals, as the only question was which of two creditors was entitled to a preference.

One of the most delicate duties a court is called upon to perform is that of fixing the fees of the attorneys in cases in which they are entitled to be paid out of a fund or estate under the jurisdiction of the court. There is no standard formula or specific guide for fixing the amount of the counsel fee to be allowed the attorney for a receiver. While the amount of the allowance for fees in a receivership lies in the sound discretion of the court in which the receivership proceedings occur, the allowance should be reasonable according to the circumstances of the case. The considerations which should control in fixing the counsel fee are the value of the property in controversy; the legal difficulties encountered; time, labor, and skill required and experience in the proper performance of the duties imposed; the fair value of the services measured by common business standards; the particular benefit derived from the receiver's attention and efforts in the interest of the estate; and the degree of integrity and dispatch with which the work of the receivership is conducted. *Great National Insurance Co. v. Empire Fire Insurance Co.,* 165 Md. 510, 517, 170 A. 165; *County Corporation of Maryland v. Semmes,* 169 Md. 501, 527, 182 A. 273.

Where a court is authorized to fix the amount of the counsel fee for the attorney for a receiver, the amount it allows is treated as presumptively correct, since the court has the opportunity to know and properly estimate the value of the attorney's services, and the allowance will not be disturbed by the Court of Appeals unless there is clearly an abuse of discretion. *O'Dunne v. Safe Deposit & Trust Co. of Baltimore,* 133 Md. 91, 104 A. 262; *Stuart v. Boulware,* 133 U. S. 78, 10 S. Ct. 242, 33 L. Ed. 568.

We agree with appellant that the additional counsel fee of $1,800 allowed by the Court below is clearly excessive. It appears that the receiver did not make any request for an additional counsel fee for his attorney between the time of the entry of the appeal by the City and the decision of the Court of Appeals. As we have said, appellant was induced to pay a total of $8,000 for the equipment and stock in the lounge by alleged misrepresentation, and the Court allowed him only $5,500. If the second amended account were allowed to stand, the allowance would be further reduced to $3,874.56.

We must also bear in mind that the City Solicitor had the primary responsibility of seeing that the record was properly prepared for transmission to the Court of Appeals. In view of the fact that the attorney for the receiver has received $2,000 for his services in the proceedings, we are convinced that an additional fee of $300 is reasonable. We must, therefore, reverse the order overruling appellant's exceptions.

> *Order reversed and case remanded for amendment of the auditor's account in accordance with this opinion, the costs to be paid out of the receivership fund.*